(C. D. 169)

F. A. Forrest *v.* United States

United States Customs Court, Third Division

(Decided June 1, 1939)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.

*Charles D. Lawrence,* Acting Assistant Attorney General (*Charles J. Miville, Richard E. FitzGibbon, Richard H. Welsh,* and *Joseph E. Weil,* special attorneys), for the defendant.

Before Cline, Evans, and Keefe, Judges

Evans, Judge: This is an action against the United States to recover money claimed to have been collected in excess of the amount due upon importations of a commodity described on the invoices as feeding rolled oats from Canada imported into the port of Noyes, Minn. Two cases were consolidated and tried together. The collector of customs assessed duty on the importations at 80 cents per 100 pounds under the provision of paragraph 726 of the Tariff Act of 1930 for "rolled oats." That paragraph is in the following language:

Par. 726. Oats, hulled or unhulled, 16 cents per bushel of thirty-two pounds; unhulled ground oats, 45 cents per one hundred pounds; oatmeal, rolled oats, oat grits, and similar oat products, 80 cents per one hundred pounds.

The plaintiff makes various claims in his pleadings but relies on the claim that these feeding rolled oats are excluded from the purview of paragraph 726, *supra,* because, as he claims, in the trade and com-

merce of the United States the term "rolled oats" includes only those that are fit for human consumption. He therefore contends *that they* are properly dutiable under paragraph 1558 of the same law at 20 per centum ad valorem as an unenumerated manufactured article.

In support of this claim plaintiff introduced the testimony of five witnesses at hearings at the ports of Minneapolis, New York, and Buffalo. The Government conceded that the merchandise is unfit for human consumption.

The first witness described the process of producing these feeding rolled oats as follows:

When the oats are received in the plant they are put over what we call a scalper, which takes out the foul seeds and pieces of straw. They then go over magnetic separators, which take out the pieces of metal such as nails or bolts, or anything of that sort. They then go to the hullers, where the oats are hulled. There is a screener on that which draws off the hulls and just leaves the grain; there is a great quantity of broken pieces of small oats. The whole goes over to another small scalper which takes out the small broken groats and foreign matter, and some of the oats which are hulled; then the cleaned groats go through a roller where they are flattened out. From the roller they go over an aspirator, which has a strong air suction, and that draws off any meal or any other objectionable feature in the rolled oats and leaves the clean product.

This witness also stated that in producing this merchandise mixed feed oats are used. He described mixed feed oats as follows:

Feed oats are really, in one sense, screenings from the cleaning of grain. When grain goes into the elevators it is put over cleaners, and the mixed feed oats are taken out of the grain, whether it is wheat, barley, or rye. Then these mixed feed oats come under the category of mixed feed oats. Otherwise, before that they are just a part of the grain, more or less screenings.

He further testified that edible rolled oats are made from white, plump oats, which are kiln dried, steamed, hulled, and rolled. This witness together with three of the four remaining witnesses gave testimony to the effect that in the trade and commerce of the United States at and prior to June 17, 1930, the term "rolled oats" had a definite, uniform, and general meaning, i. e., rolled oats for human consumption made from large, white oats, which differs from the dictionary definition, and that feeding rolled oats such as those now before us are excluded from that term "rolled oats" in the trade. Mr. M. L. Smith, who also testified in behalf of the plaintiff, admitted that he didn't know whether the term "rolled oats" in trade included feeding rolled oats; that he didn't know anything about feeding rolled oats.

The Government produced no testimony in rebuttal but filed the following letter with the clerk of the court:

Upon consideration of the record and brief of opposing counsel, this office does not desire to file a brief on behalf of the United States in the above entitled case.

The question then is, has the plaintiff established commercial designation within the meaning of the law. In the case of *Neuman & Schwiers Co., Inc.* v. *United States*, 24 C. C. P. A. 127, T. D. 48606, the court discussed among others the case of *United States* v. *Julius Wile Sons & Co.*, 22 C. C. P. A. (Customs) 267, T. D. 47327, and reviewed the history of this rule of construction in the following language:

We have pointed out, on numerous occasions, and did so again in the *Wile* case, *supra*, what the true rule was. This conclusion was based upon a uniform line of authorities from the beginning of the consideration of such cases by the courts of this country. The Supreme Court, in the very early consideration of these matters, as in the noted case of *Two Hundred Chests of Tea*, 9 Wheat. 428, recognized that customs laws were particularly adapted for use by merchants, and that it might well be that commodities which were well known among those who were engaged in the trade, under a certain designation might not be so known, by those who were not engaged in trade; that the Congress was to be understood as speaking in terms of the trade; and that if an article, although not commonly known as designated by the law, was uniformly, definitely, and generally known by that designation in the trade and commerce of the country, it should be included within the statutory term. This rule has been carried down through the years, continuously. * * *

The only modification of this doctrine is found in the further rule announced by us in such cases as *Hampton, Jr. & Co.* v. *United States, supra,* and *I. Shalom & Co., Inc.* v. *United States*, 22 C. C. P. A. (Customs) 85, T. D. 47067, that if the congressional intent is plainly manifested that such commercial meaning shall not be applicable, then the court will follow the congressional intent.

We find nothing to indicate, nor has it been pointed out to us that the Congress intended that the commercial meaning should not apply in the case at bar. The Court of Customs and Patent Appeals in the case of *C. J. Tower & Sons* v. *United States*, 25 C. C. P. A. 408, at 411 (T. D. 49486), in construing the provision for rolled oats in paragraph 726, *supra*, stated:

PAR. 726. * * * It is our view that the oatmeal, rolled oats, oat grits, and similar oat products, made dutiable at 80 cents per 100 pounds in paragraph 726, were those which were at least suitable for human consumption.

Upon this record, therefore, we find that plaintiff's claim that the merchandise before us is excluded from the provisions of paragraph 726, *supra*, being unfit for human consumption, should be and the same hereby is sustained. These feeding rolled oats are not enumerated in the tariff act and the record shows that they are a manufactured product. They would therefore fall within the provision in paragraph 1558, *supra*, for unenumerated manufactured articles dutiable at 20 per centum ad valorem. We so hold.

Judgment will be rendered accordingly. It is so ordered.