(C. D. 309)

A. C. GONZALEZ v. UNITED STATES

United States Customs Court, Third Division

(Decided April 1, 1940)

W. C. Roche for the plaintiff.

Webster J. Oliver, Assistant Attorney General (Richard H. Welsh, special attorney, and Joseph A. Howard, Jr., junior attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges

CLINE, Judge: This is a suit against the United States in which the plaintiff seeks to recover a part of the duty assessed on certain corn products imported from Mexico through the port of El Paso, Tex. Duty was assessed by the collector at the rate of 50 cents per hundred pounds under the provision for "corn grits, meal, and flour, and similar products" in the second part of paragraph 724 of the Tariff Act of 1930. The plaintiff claims that the merchandise should be assessed at 20 per centum ad valorem as a nonenumerated manufactured article under paragraph 1558 which is the provision under which it was entered. A further claim is made, in the alternative, that the merchandise is dutiable at 25 cents per bushel under the first clause in paragraph 724 as "cracked corn" either directly or by similitude. The pertinent parts of the provisions in question read as follows:

PAR. 724. Corn or maize, including cracked corn, 25 cents per bushel of fifty-six pounds; corn grits, meal, and flour, and similar products, 50 cents per one hundred pounds.

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

PAR. 1559. That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned; * * *.

The plaintiff, Mr. A. C. Gonzalez, testified that he purchased corn at different points in Chihuahua, Mexico, and shipped it in bulk to

Juarez, where he had the corn sacked and taken to a mill at which place it was prepared in its condition as imported. The witness testified that he is a broker and has been in the milling business and is familiar with the milling and preparation of corn and similar products. In describing the process which the instant merchandise had undergone he stated that the corn was shelled in a crude way; that "shaft and half pieces of cobs and everything else" remained in the resultant product; that it is fed through a funnel into a small machine that "has 2 rocks; one is fixed and the other revolves, and it just cracks the corn, breaks the corn; no other process whatever."

A sample of the imported product was admitted in evidence and marked Exhibit 1. When asked how he would classify it, he said it was broken corn. Subsequently he said it was cracked or crushed corn. He further testified that the corn had undergone no other process than that described and that it was not intended for human consumption but was cattle feed. On cross-examination the witness said that he would not call the process which he had described a milling process, but later he testified as follows:

X Q. That is just a degree of milling though, is it not?—A. I suppose you would call it that, but we don't call it. We call it cracked corn, martajada.

X Q. But in order to accomplish this you did have to put it through a milling machine?—A. Through a machine, yes.

The second witness on behalf of the plaintiff, Mr. Louis Alberto Vergara, testified that he has a mill and that he prepared the instant commodity. His description of the process used was in substance the same as that given by the first witness. He also stated that he was familiar with the manner and method of making corn flour and other products derived from the milling of corn, and designated the imported commodity as broken corn. This witness further testified that he has a special mill for broken corn and another for corn meal. On cross-examination he stated that the corn he ground for the importer herein was shelled corn and that the mill, consisting of the two stones, can be adjusted so as to make the resulting product coarse or fine.

The Government offered the testimony of two witnesses, the first of whom, Mr. J. G. Stephens, described himself as an operative miller engaged in milling grain—wheat flour and corn—having been superintendent in charge of operations with a large milling organization since 1917. He testified that there are various degrees of cracked corn called "coarse, medium, and fine" and that "cracked corn is corn that has passed through rolls, been crushed or broken." When shown Exhibit 1 he stated that "it is coarse corn meal feed." He defined corn meal feed as "corn that has been ground to a specified fineness." On cross-examination, when asked to state the difference between

corn meal feed and cracked corn, he said: "Well, cracked corn has had the fine meal taken out of it."

The second witness appearing on behalf of the defendant, Mr. C. O. Jones, also described himself as an operative miller, with an experience of 5 years with a large milling company that supplies the southwestern portion of Texas, New Mexico, and Arizona. Based upon his long experience in the milling business he defined cracked corn as the broken grains of corn. When shown Exhibit 1, the sample of the merchandise in suit, he described it as finer than cracked corn. He stated it was corn feed meal or corn feeding meal and that it was not cracked corn. When asked the difference between cracked corn and corn meal feed, he said "cracked corn has been higher refined than has corn feed meal."

Counsel for the plaintiff contends in his brief that the merchandise is not within the provisions for "corn grits, meal, and flour, and similar products" under paragraph 724, wherein it was classified by the collector, for the reason that it is not fit for human consumption, citing *Central Vermont Railway Co. et al.* v. *United States*, T. D. 40375, 46 Treas. Dec. 152. In that case the court had certain hominy feed under consideration which merchandise had been classified under the identical provision in paragraph 724 of the Tariff Act of 1922. That merchandise was a byproduct from milling grain and the court held that it was classifiable as byproduct feeds obtained in milling cereals and dutiable at 15 per centum ad valorem under paragraph 730. The court said:

\* \* \* In our view paragraph 724 was intended to provide for corn products suitable for human food, and all other derivatives from corn or maize are provided for in paragraph 730. \* \* \*

The above language was quoted and the decision followed in the case of *Pena & Flores Importing Co.* v. *United States*, T. D. 49052, 72 Treas. Dec. 18.

The decision in *Central Vermont Railway Co. et al.* v. *United States, supra*, was called to the attention of Congress in the Summary of Tariff Information of 1929, page 1187, under the heading "Corn grits, meal, and flour, and similar products," and, as the provision was reenacted in the Tariff Act of 1930 without change, it must be presumed that Congress intended that the language should have the same meaning as given it by the court. This rule of construction is stated in *United States* v. *Kawahara*, 15 Ct. Cust. Appls. 231, 234, T. D. 42242, as follows:

The foregoing facts, not only invite but require the application of a well-established rule, that where a given term in a tariff statute has been judicially interpreted and thereafter reenacted in substantially the same language \* \* \* the given term will, if found in a later statute, be given the same interpretation, unless a contrary legislative intent clearly appears.

Other information given in the Summary of Tariff Information of 1929 with respect to the subject of "corn grits, meal, and flour, and similar products" (pages 1186 and 1187) has reference to commodities used for breadstuffs, which manifestly refers to human foods. The statements are as follows:

Production.—About 4 per cent of the total corn crop is ground in merchant mills, much of which is used for breadstuffs.

Imports.—Imports of corn products used for breadstuffs are almost negligible.

There is nothing in the record which tends to show that the merchandise herein involved is corn grits, meal, or flour, or similar products which are provided for in the second part of paragraph 724. Therefore, inasmuch as it is established that the merchandise is used solely as food for animals and is not fit for human consumption, it can not be classified under the provision for "corn grits, meal, and flour, and similar products" as returned by the collector.

There remains to consider the question as to whether the commodity is dutiable under either of the provisions claimed in the protest, namely as "corn or maize, including cracked corn," under the first part of paragraph 724, or as a nonenumerated manufactured article under paragraph 1558.

While the court stated in *Central Vermont Railway Co. et al.* v. *United States, supra,* that "paragraph 724 was intended to provide for corn products suitable for human food," the court had under consideration the second part of the paragraph only, that is, the provision for "corn grits, meal, and flour, and similar products." The provision for "corn or maize, including cracked corn," in the first part of the paragraph was not involved in the case, and, accordingly, the above-quoted statement, regarding the uses of the products in paragraph 724, is not applicable to that provision. At any rate, the testimony in the case now before the court is sufficient to establish that corn and cracked corn are not fit for human consumption. Defendant's witnesses J. G. Stephens and C. O. Jones so testified. Mr. Stephens gave the following testimony on that point:

Q. Is shelled corn, just simply the shelled corn itself, that nothing has been done to it, is that fit for human consumption?—A. No, sir.

Q. Have you also had occasion to deal with cracked corn, with nothing having been done to it except cracked?—A. Yes, sir.

Q. Is that fit for human consumption?—A. It is not.

Q. Would corn on the cob without anything having been done to it be fit for human consumption?—A. No.

Mr. Jones testified:

Q. Is corn on the cob, without having anything done to it, fit for human consumption?—A. No, sir.

Q. Is shelled corn, without having anything done to it, fit for human consumption?—A. No, sir.

Q. Is cracked corn that has just simply been cracked and nothing else done to it fit for human consumption?—A. No, sir.

The uses of the corn provided for in the first phrase of paragraph 724 were called to the attention of Congress in the Summary of Tariff Information, 1929, on page 1183, as follows:

Uses. About 85 per cent of the domestic corn crop is consumed on the farm and does not enter the channels of trade. Of the 85 per cent consumed on the farm, 41 per cent is fed to hogs, 20 per cent to horses and mules, 17 per cent to cattle and sheep, 4 per cent to poultry, and about 3 per cent for human food. Of the 15 per cent moved from the farm, about 6 per cent is fed to stock not on farms, 4 per cent is ground in merchant mills, 1 per cent is exported, and 4 per cent goes to other uses.

With the above information before it, Congress could not have intended to limit the corn, or maize, or cracked corn, in the first part of paragraph 724 to that used for human consumption, for it appears that only a small percentage of corn is so used. Therefore the statement of the court in *Central Vermont Railway Co. et al.* v. *United States, supra,* to the effect that paragraph 724 covers commodities for human consumption only is incorrect if it was intended to refer to the commodities provided for in the paragraph other than "corn grits, meal, and flour, and similar products."

The plaintiff's witnesses described the imported product under various names, such as "broken corn," "cracked corn," and "crushed corn." In describing the method of manufacturing the product, they stated that shelled corn was passed through one set of stones or rocks and crushed and that the same stones could be adjusted so as to make the product coarse or fine. The defendant's witnesses designated the commodity as "coarse corn meal feed," "corn feed meal," and "corn feeding meal" and stated that the imported product is finer than cracked corn and that cracked corn is higher refined than the imported commodity as the fine meal has been removed.

It is obvious that the imported merchandise has passed beyond the condition of corn or maize because the original corn has been crushed. Therefore it is something more than the "corn or maize" provided for in paragraph 724, unless it is "cracked corn." The testimony is not sufficient to prove that the commodity is either "corn" or "cracked corn" within commercial nomenclature. The witnesses stated their individual views regarding the name of the merchandise and did not attempt to testify to the name by which it was known in trade and commerce at the time the Tariff Act of 1930 was enacted.

The record shows that the merchandise was produced by the same method that is used in making cracked corn, the only difference being that possibly the stones in the mill may have been set closer together than when cracked corn is manufactured. Also the fine meal has not been removed, which is done when cracked corn is produced. Therefore the record is not sufficient to establish that the merchandise comes directly within the provision for "corn" or "cracked corn" and the only

other tariff provision available for classification of the commodity is that for a nonenumerated manufactured article in paragraph 1558.

The plaintiff claims, however, that the merchandise is dutiable as cracked corn by similitude. It is well settled that it is the duty of the court to apply the similitude provision in paragraph 1559 before resort can be had to the nonenumerative catch-all provision of the tariff act. *Bartley Bros. & Hall et al.* v. *United States*, 3 Ct. Cust. Appls. 363, 367, T. D. 32961. The court said:

> The fact that the merchandise is used exactly as is whiting and for the same purpose appears, as stated, uncontradicted in the record. Paragraph 54 of the act [1909] provides, *eo nomine*, for "whiting and Paris white." There is a similitude of use between this importation and whiting. It is the duty of the court to apply the similitude clause before resort can be had to the nonenumerative catch-all provision of the tariff act. *Kahn* v. *United States* (100 Fed. Rep., 635, 637); *Arthur* v. *Fox* (108 U. S., 125).

In the case of *Arthur* v. *Fox*, cited in the above excerpt, the court described the scope and intent of the similitude clause as follows:

> * * * If an article is found not enumerated in the tariff laws, then the first inquiry is whether it "bears a similitude, either in material, quality, texture, or use to which it may be applied, to any article enumerated * * * as chargeable as with duty." If it does, and the similitude is substantial, then, in the language of the court in *Stuart* v. *Maxwell, supra,* "it is to be deemed the same, and to be charged accordingly." In other words, although not specifically enumerated, it is provided for under the name of the article it most resembles. * * *

As stated in the syllabus in *Rud. C. Hahn et al.* v. *United States,* T. D. 24433, 6 Treas. Dec. 424, "In order that the similitude clause may apply, it is only necessary that a substantial similarity shall exist in any one of the particulars mentioned in the statute, and not in two or more."

The record in this case does not show that the commodity is similar to corn grits, meal, or flour, or similar products in any of the particulars named in paragraph 1559, but all the witnesses agreed that it is suitable for and is used for feeding animals and that cracked corn is used for the same purpose. Defendant's witness Stephens testified that the imported product has the same food value for feeding animals as cracked corn.

> X Q. Well, what is the difference between a feed meal and cracked corn?— A. Probably the feeding value wouldn't be different, but your fineness there would be. You have got a meal there against a cracked corn, and the feeding value would be the same.
>
> \*      \*      \*      \*      \*      \*      \*
>
> X Q. Well, now, wouldn't that be true in the case of cracked corn as well as in corn meal?—A. Well, which are you having reference to now, table meal or feed meal?
>
> X Q. Only for animal consumption.—A. Well, it would be the same.
>
> \*      \*      \*      \*      \*      \*      \*

X Q. So that cracked corn and coarse corn meal would be practically the same thing?—A. Yes.

By Mr. WELSH:

R. Q. By that last answer you meant corn feed meal and cracked corn would be practically the same for feed value only?—A. Yes, for feed value only.

Since the imported article is used for the same purpose as cracked corn and has the same food value in such use, there is a substantial similitude in use. The similitude provision in paragraph 1559 is a statutory rule which, in our opinion, should not be ignored, and, under the provisions thereof, the merchandise cannot be classified as a nonenumerated manufactured article under paragraph 1558. Therefore that claim in the protest must be and hereby is overruled.

While a substantial similitude in only one of the particulars mentioned in paragraph 1559 is sufficient to invoke the statute, the evidence in this case establishes that the ingredients in the imported commodity are the same as those in corn or cracked corn because the imported product is made directly from corn. Mr. Stephens testified on that point as follows:

Q. What is cracked corn?—A. Cracked corn is corn that has passed through rolls, been crushed or broken.

Q. Now do you have an opinion as to what corn meal feed is?—A. Corn meal feed is corn that has been ground to a specified fineness.

\* \* \* \* \* \* \*

X Q. What is the difference, Mr. Stephens, between cracked corn and corn meal feed?—A. Well, cracked corn has had the fine meal taken out of it.

\* \* \* \* \* \* \*

X Q. Well, isn't it true, Mr. Stephens, that the only difference is the degree of breaking or grinding?—A. Well, yes.

X Q. That is the only difference, is it not, where the whole product remains intact and nothing taken from it?—A. Yes.

It is apparent from the evidence that the uses of the imported product and of cracked corn are similar and that the material in the two products is identical. We hold that, by virtue of the provisions in paragraph 1559 above quoted, the merchandise herein involved is dutiable as cracked corn by similitude at the rate of 25 cents per bushel of 56 pounds under paragraph 724, that claim in the protest being sustained. Judgment will be entered in favor of the plaintiff to that extent.