(C. D. 535)

Mary G. Ricks *v.* United States

United States Customs Court, Third Division

(Decided September 24, 1941)

*Harper & Harper (Abraham Gottfried of counsel)* for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Joseph E. Weil* and *Joseph F. Donohue*, special attorneys), for the defendant.

Before Cline and Keefe, Judges

Keefe, Judge: This action involves certain merchandise invoiced as barley bran and assessed at San Diego with a duty of 20 per centum

ad valorem under paragraph 1558, act.of 1930, as a nonenumerated manufactured article. The plaintiff claims that the merchandise is properly dutiable, either directly or by similitude, at 5 per centum ad valorem under paragraph 730, as amended by the Canadian Trade Agreement, T. D. 49752.

In support of such claims it is contended: First, that the merchandise is dutiable under said paragraph as *"byproduct feeds obtained in milling wheat or other cereals,"* because as a byproduct obtained in milling, the term "milling" is not limited to grinding processes such as are used in the production of wheat flour from wheat, but is broad enough to comprehend such.phases of milling as are employed in the manufacture of the imported product which is used exclusively for the feeding of livestock.

Second, that the merchandise is dutiable under said paragraph as *"mixed feeds, consisting of an admixture of grains or grain products with oil cake, oil-cake meal, molasses, or other feedstuffs,"* for the reason that it is composed of small barley kernels, barley hulls, barley beards, barley screenings, etc., which have been mixed with *other feedstuffs* such as malt sprouts, malt screenings, malt, hay, and straw, it being contended that the latter ingredients are not grain or grain products, but, being products of malt, fall within the definition of "other feedstuffs."

Third, that if not dutiable directly, the merchandise is dutiable by similitude as a byproduct feed because it is derived through milling processes similar to those of wheat or other cereals, and, being a product of barley, it is similar in material to a byproduct feed that has been obtained in the manufacture of a cereal; that inasmuch as it is ground into a meal, it has the same texture; and that as it is capable of being fed, as imported, as a balanced ration animal feed, it is similar in quality and use to a byproduct feed.

Fourth, that if not dutiable directly, the merchandise is dutiable by similitude to a mixed feed in all the four particulars of the similitude clause because (a) it is capable of use in its imported condition as a feedstuff the same as a mixed feed; (b) the grinding thereof imparts to it the same texture as mixed feed; (c) that the fact that it is composed of an admixture of a grain or grain product with malt sprouts, another feedstuff, evidences a similarity of materials; and (d) that as it is regarded as a balanced ration animal feed, a necessary factor of a mixed feed, there is a similarity of quality.

The Government contends: First, that the merchandise in question is excluded from classification as a byproduct feed because malt is admittedly not a cereal and consequently the manufacture of malt is not to be regarded as the milling of a cereal, and consequently the waste byproducts of such manufacturing process may not be regarded as a byproduct derived by processes similar to those used in milling wheat; and, Second, that the merchandise is excluded from the provision for

mixed feeds in the absence of the inclusion of "other feedstuffs" in the mixture, the term "other feedstuffs" being construed to exclude any feedstuffs which may come within the class of grain or grain products.

In support of the foregoing contentions the plaintiff produced three witnesses, including the producer of the imported product, and the Government produced one witness in rebuttal. A resume of such evidence discloses the following facts.

The commodity in question is a byproduct derived from the conversion of barley into malt, which is sold exclusively to brewers for use in brewing beer. In this process the barley, in the condition in which it is taken from the fields, is first cleaned and debearded. The clean barley is then segregated from the screenings, chaff, and foreign seeds. After grading into three sizes, the barley is placed in tanks containing water where it is allowed to absorb a certain quantity and then is placed in germinating drums. After the germination is artifically stopped, the product is placed in kilns where the moisture is driven out. The resulting product from these processes is malt, having still attached thereto the malt sprouts. During each of the above processes the refuse material taken from the barley is stored for subsequent use. The malt sprouts are removed from the malt and the malt is screened. Thereafter the malt is ready for sale to breweries. The malt sprouts and screenings are also stored for subsequent use. After the production of the malt all of the byproducts taken therefrom during the various cleaning processes are mixed together and ground to a fine consistency in a hammermill consisting of a number of hammers revolving at high speed. The resulting product is sold in the United States under the name of barley bran feedstuffs.

The machinery used during the processes of producing malt consists of a debearding machine, a disk machine having disks which revolve at high speed, a cylinder machine consisting of a separator or grader, and the malt cleaning machine.

Illustrative exhibits of the materials derived from processing in the various stages of manufacture were admitted in evidence, a description of which follows.

Exhibit A represents the field-grown barley as received at the malting plant and includes dust, straw, foreign seeds, chaff and barley with projecting beards.

Exhibit B represents the products separated from the barley in the debearder, consisting largely of short straws, broken or small grains and chaff including the beards.

Exhibit C represents small barley kernels and various foreign seeds and broken kernels separated from the barley in the disk machine, many of the foreign seeds being denuded of their outer coverings or husks.

Exhibit D consists of two bottles containing chaff or screenings, one being of coarser material than the other, also removed from the barley in the disk machine.

Exhibit E consists of three bottles of cleaned barley. Exhibit E-1 containing the large-sized grains, exhibit E-2 the medium sizes, and exhibit E-3 the smaller grains. The grain contained in these exhibits still possesses outer husks. There is no indication of the removal of any of the bran. The kernel or embryo of the barley is not denuded of its outer coverings to any noticeable degree, much less the coarser outer skin portions of the embryo of the grain.

The remaining illustrative exhibits pertain to the malt. Exhibit F represents the malt after it leaves the kilns. The grains have the sprouts attached thereto as well as the outer husks.

Exhibit G represents the sprouts removed in the debearder and the sprout cleaning machine. This material consists of fine hairlike particles.

Exhibit H represents certain screenings of malt removed from the malt grains during the same process.

Exhibit J represents the malt itself, after having been subjected to the cleaning processes and after reaching the condition where it is prepared and ready for sale to breweries. The malt in its prepared condition is precisely the same in appearance as the barley represented in collective exhibit E, except that the outer husks are a trifle darker in color.

The sample of the merchandise in question admitted in evidence as exhibit K, consisting of a mixture of illustrative exhibits B, C, D, G, and H, ground together, presents the appearance of a mixture of bran and shorts ground together with screenings of grain and containing husks and small unbroken grains, as well as coarse meal and fine particles.

Considerable evidence was adduced relative to the meaning of the term "milling wheat or other cereals." The manufacturer of the product herein disagreed with the dictionary definition as not sufficiently comprehensive of the term "milling," defined by the lexicographers as a process of grinding or subjection of materials to the action of grinding-mill machinery. In the opinion of the witness the term "milling" includes the process of cleaning and working the grain as well as the grinding thereof. Within his understanding a portion of the process employed in the manufacture of malt was similar to that of "milling."

A dealer in feedstuffs, including the merchandise in question, testified upon behalf of the plaintiff that although technically the term "milling" means grinding, the common usage of the term would include any step in the manufacture of flour or cereals; that such step might be grinding, cleaning, grading, or the washing of cereals; that

the production of barley bran was similar to the production of wheat bran.

A flour and feed salesman connected with a wheat flour mill and familiar with the milling of wheat testified for the Government that, in respect to wheat, grinding is a milling process. In such process the kernel of the wheat is crushed in revolving rollers and sieved, resulting in the recovery of a small quantity of flour; that the broken-up mass is then transported to a second set of rollers where another portion of flour is recovered; and that such treatment continues from roller to roller until finally the wheat flour has been entirely recovered and all that is left is the wheat bran. That in the milling of flour, the flour is taken from the inside of the grain of wheat in successive processes until the final residue consists of the hull or bran. In other words, the outer skin or hull of wheat is not first removed from the kernel and the remainder ground into wheat flour, but the inner portions of the kernel are gradually segregated until the final residue is the outer skin or hull consisting of bran and middlings.

The witness further testified that prior to processes undertaken in modern mills, wheat is cleaned and washed with water and subjected to a separation process for the removal of extraneous material, such as the oats, barley, straw, and broken kernels, and that such processes form no part of milling. That in the milling of feed from wheat, cleaning is not necessarily a part of milling because feed may be manufactured from uncleaned grains as well as cleaned.

The witness further testified that the hulls cannot be removed from wheat without putting the material through rollers and therefore the removal of the hulls is necessarily a part of the milling process. In his opinion, a product taken from a part of the kernel of the grain itself would be accomplished by means of a milling process; that after a grain is cleaned and all foreign substances extracted, the removal of anything else from the grain would be performed through milling processes. That chaff or screenings removed by suction or fan methods is the refuse of cleaning processes. However, if such refuse has to be removed through the use of machinery which physically removes the same from the kernel, such removal, in the opinion of the witness, would be a process of milling, and that the chaff or screenings of barley, as represented by exhibit D, would be the result of a milling process if such material could not be obtained without the necessity of being physically removed from the kernel by means of machinery.

The evidence further discloses that the so-called barley bran is used in the United States as a feedstuff in its imported condition for the feeding of animals and has no other use and that it is sold as barley bran feedstuffs.

The question at issue is whether or not the merchandise herein is a byproduct feed or a mixed feed within the meaning of those terms in paragraph 730, or, if not directly comprehended therein, whether or not it is of such character that it should be classified thereunder by similitude in material, quality, texture or use. Should there be such a similitude in any one of the four particulars which is substantial in character, the material should be classified thereunder rather than as a nonenumerated manufacture unless the wording of the provision expressly excludes the application of such similitude. See *Gonzalez* v. *United States* (4 Cust. Ct. 147, C. D. 309); *Fensterer & Ruhe* v. *United States*, 1 Ct. Cust. Appls. 93, T. D. 31110.

Inasmuch as considerable evidence was adduced relative to the meaning of terms appearing in the tariff act insofar as the merchandise before us is affected, we think it well to first consider the meaning thereof as defined by various lexicographers.

Barley is generally defined as a cereal grain, which, unlike wheat, is covered with a tough and closely adhering husk. A husk is the external covering of a grain or seed. When separated from the seed by thrashing these external envelopes or husks become known as chaff and consist of dry, depauperate scales or bracts. Bran, on the other hand, is the outer coat of wheat or other grains separated by bolting. The term "bolt" is applied to the milling art as the operation of sifting or separating the coarser from the finer particles of grain, such as bran from flour. There are three products of barley other than malt defined by the lexicographers, to wit, pearl barley, the grain deprived of husk or the thin skin or cuticle known as the pellicle, and completely rounded by grinding; patent barley, the farina obtained by grinding pearl barley; and barley meal, a flour made from barley. Malt is defined as a grain that has been artificially germinated by means of moisture and heat, barley being the grain largely used for malting in the manufacture of beer, yielding about 92 per centum of its weight of dried malt; and that barley malt has a peculiar flavor derived from empyreumatic oil generated in the husk. The dictionaries define brewing as consisting of two processes: First, the malting of barley after being separated from its impurities; and Second, the brewing proper. In such malting process three steps are necessary, to wit, steeping in water to cause germination, kilning, or drying and screening. The machinery used in the brewery for malting purposes consists of a malt-cleaning machine, which is a grain cleaner for freeing barley, previous to malting, from all extraneous substances such as other grains, seeds of grass or weeds, dust, and foul matters, a cleaning and sorting machine, and a malt drier for artificially drying malt to arrest the progress of germination and the chemical change in the constituents of the grain. The term "milling" is defined as the process of grinding or subjecting materials to the action of a grinding mill; the

manufacture of cereals into flour or meal. An article is considered "milled" when made or prepared in or by a grinding mill.

The Tariff Act of 1930 specifically provides for the various products of barley and malt. In paragraph 722 barley, hulled or unhulled, is assessed at 20 cents per bushel of 48 pounds; barley malt is assessed at 40 cents per 100 pounds; and pearl barley, patent barley, and barley flour at 2 cents per pound. Paragraph 730 provides for malt sprouts at $5 per ton and for the hulls of barley, ground or unground, at 10 cents per 100 pounds.

Bearing in mind the common meaning of the term "milling" which through commercial usage has not been shown herein to have acquired a different meaning in the trade and commerce of the United States, we are of the opinion that the merchandise fails to come directly within the tariff meaning of "by-product feeds obtained in milling wheat or other cereals." The methods used to produce some of the ingredients of the byproducts in question are clearly brewing processes, while the remainder of the ingredients is produced as the result of the cleaning of grains from foreign substances and chaff, preparatory to malting, and consist of such refuse matter as is ordinarily screened from grain in grain elevators, as stated in *Forrest* v. *United States* (2 Cust. Ct. 425, C. D. 169). The merchandise herein consists of unhulled barley and barley malt as specifically provided for in paragraph 722, malt sprouts and certain of the barley hulls as provided for in paragraph 730, and screenings of grains, provided for in paragraph 731, all mixed together and ground. The product is not composed of bran. The term "barley bran" as applied to the merchandise is clearly a misnomer.

In the case of *United States* v. *Myers* (29 C. C. P. A., 30, C. A. D. 168) the Court of Customs and Patent Appeals had under consideration a mixture of oat hulls and Banner feeds, byproducts in the milling of oats. The court stated that the merchandise was not dutiable as "mixed feeds" because both the oat hulls and the Banner feed are grain byproducts produced in milling oats and paragraph 730 does not provide for mixed feeds containing an admixture of grains or grain products, but for a feed consisting of an admixture of grains or grain products with feedstuffs other than grain products, including oil cake, oil-cake meal and molasses. It was likewise pointed out that oat hulls are *eo nomine* provided for in paragraph 730, and that the product under consideration was prepared by mixing a byproduct feed obtained in milling oats with another tariff entity, to wit, oat hulls, and grinding the mixture, and therefore was not comprehended within the term of the statute as a byproduct feed "obtained in milling."

The material before us here includes malt, which is commonly known as a grain, and malt products. A product derived from a grain product is not intended by Congress to become dutiable as

"other feedstuffs," because in defining "mixed feeds" as "an admixture of grains or grain products with  *  *  *  other feedstuffs" Congress clearly refers to materials other than grain products.

In respect to the claim of similitude of the material herein with byproduct feeds or mixed feeds, the appellate court stated in the case of *Tower* v. *United States*, 25 C. C. P. A. 408, T. D. 49486, that there is not much similarity between a byproduct stock or poultry feed such as bran and a mealy material made by grinding a mixture of oats, barley, wheat and certain impurities, and that the fact that both are fed to stock is insufficient to apply a similitude of use. The court also regarded any similitude of texture and quality as insufficient to apply the similitude rule. We are of opinion that the findings of the appellate court in that case are equally applicable to the merchandise before us.

We are further of the opinion that the rule of similitude is inapplicable because of the exclusion rule. The provision for "by-product feeds obtained in milling wheat or other cereals" expressly, by the terms thereof, excludes byproduct feeds obtained in any other manner than milling. Likewise a mixed feed which does not consist of an admixture of grains or grain products with other feedstuffs is expressly excluded by the terms of the statute. In the case of *Fensterer & Ruhe* v. *United States*, 1 Ct. Cust. Appls. 93, T. D. 31110, our appellate court held that when the statute expressly prescribes a duty for material when in a certain condition, it must be taken to preclude the application of the similitude statute to the same material not in that condition. See also the case of *Corporacion Argentina De Productores De Carnes* v. *United States* (6 Cust. Ct. 211, C. D. 464).

For the reasons stated we find that the merchandise herein is not specially provided for in any of the enumerated paragraphs of the Tariff Act of 1930 either directly or by similitude and therefore hold it properly dutiable as a nonenumerated manufactured article as assessed by the collector.

Judgment will be entered accordingly.