The judgment of the United States Customs Court is *affirmed*.

UNITED STATES *v.* INTERNATIONAL MILLING CO. (No. 3031[1])

---

[1] T. D. 42809.

United States Court of Customs Appeals, May 25, 1928

Charles D. Lawrence, Assistant Attorney General (James R. Ryan, special attorney, of counsel), for the United States.

Barnes, McKenna & Halstead (Samuel M. Richardson of counsel) for appellee.

[Oral argument April 11, 1928, by Mr. Lawrence and Mr. Richardson]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The United States has appealed from a judgment of the United States Customs Court, Third Division (Justice Waite dissenting), sustaining appellee's protest against the collector's classification of wild mustard seeds screened from wheat or other grain.

The collector classified the merchandise, under paragraph 779 of the Tariff Act of 1922, as "mustard seeds (whole), 1 cent per pound." Paragraph 779 reads as follows:

PAR. 779. Spices and spice seeds: Anise seeds, 2 cents per pound; caraway seeds, 1 cent per pound; cardamom seeds, 10 cents per pound; cassia, cassia buds, and cassia vera, unground, 2 cents per pound; ground, 5 cents per pound; cloves, unground, 3 cents per pound; ground, 6 cents per pound; clove stems, unground, 2 cents per pound; ground, 5 cents per pound; cinnamon and cinnamon chips, unground, 2 cents per pound; ground, 5 cents per pound; coriander seeds, one-half of 1 cent per pound; cummin seeds, 1 cent per pound; fennel seeds, 1 cent per pound; ginger root, not preserved or candied, unground, 2 cents per pound; ground, 5 cents per pound; mace, unground, 4 cents per pound; ground, 8 cents per pound; Bombay, or wild mace, unground, 18 cents per pound; ground, 22 cents per pound; mustard seeds (whole), 1 cent per pound; mustard, ground or prepared in bottles or otherwise, 8 cents per pound; nutmegs, unground, 2 cents per pound; ground, 5 cents per pound; pepper, capsicum or red pepper or cayenne pepper, and paprika, unground, 2 cents per pound; ground, 5 cents per pound; black or white pepper, unground, 2 cents per pound; ground, 5 cents per pound; pimento (allspice), unground, 1 cent per pound; ground, 3 cents per pound; whole pimentos, packed in brine or in oil, or prepared or preserved in any manner, 6 cents per pound; sage, unground, 1 cent per pound; ground, 3 cents per pound; mixed spices, and spices and spice seeds not specially provided for, including all herbs or herb leaves in glass or other small packages, for culinary use, 25 per centum ad valorem: Provided, That in all the foregoing no allowance shall be made for dirt or other foreign matter: Provided further, That the importation of pepper shells, ground or unground, is hereby prohibited.

We quote from the Government's brief as follows:

The importer protested claiming the merchandise to be screenings and dutiable at 10 per centum ad valorem under paragraph 731, Tariff Act of 1922, which reads:

PAR. 731. Screenings, scalpings, chaff, or scourings of wheat, flaxseed, or other grains or seeds: Unground, or ground, 10 per centum ad valorem: *Provided*, That when grains or seeds contain more than 5 per centum of any one foreign matter dutiable at a rate higher than that applicable to the grain or seed the entire lot shall be dutiable at such higher rate.

### THE ISSUE

There is but one question at issue before this court in the instant case—i. e., Is the merchandise herein dutiable as mustard seeds (whole) within the purview of paragraph 779, Tariff Act of 1922, directly or by virtue of the proviso to paragraph 731?

The importer has limited its claim to paragraph 731, and, aside from the Government's contention that the merchandise is dutiable under paragraph 779, no other provision of the Tariff Act of 1922 is suggested as describing the merchandise involved.

We do not believe that paragraph 779 was intended to cover the class of merchandise herein under consideration. It will be noted that paragraph 779 bears the heading "Spices and spice seeds," and that the catchall provision of the paragraph is as follows:

* * * mixed spices, and spices and spice seeds not specially provided for, including all herbs or herb leaves in glass or other small packages, for culinary use * * *.

As far as we have been able to determine, every article listed in the paragraph is for human consumption. While the heading or title of a paragraph will not operate to draw within it articles which Congress has indicated should be classified elsewhere, it is given weight in determining the character of the article claimed to be dutiable under it. *United States* v. *American Shipping Co.*, 13 Ct. Cust. Appls. 346, T. D. 41254.

The case above cited involved the construction of paragraph 61 of the Tariff Act of 1922, which contains the heading "Perfume materials." This court there held that "pinelyptus," a combination of essential oils not used in the manufacture of perfumery, was dutiable, under paragraph 1459, as a manufactured article, n. s. p. f., and not dutiable under paragraph 61 as a "mixture or combination containing essential or distilled oils." *Crimmins & Pierce* v. *United States*, 6 Ct. Cust. Appls. 137, T. D. 35392, involving "wool wastes," was quoted from at length, and then the court said:

We think this case, and the cases cited, state the rule applicable to the facts at bar. While the words "Perfume materials" under certain circumstances might not be controlling as to the classification of articles within the paragraph, there is no circumstance leading to the conclusion that Congress did not intend them to be controlling. In the absence of anything showing the contrary, it is certainly strongly indicative of the legislative intent.

The evidence in this case shows, we think, that the merchandise involved is not of the class of mustard seed used as a condiment or rubefacient, but that it is used for animal feed.

The record shows the importation to consist of 55 per centum *brassica arvensis*, which is known as wild mustard, or charlock, and 39 per centum of *brassica juncea*, known as Indian mustard, and that both kinds of mustard are known as wild mustard, and that 7 per centum of the importation consisted of various other seeds, all of which were screened away from wheat or other grains; that they were not the product of intentional cultivation, but were the seeds from what would be regarded as noxious weeds growing wild in cultivated grain fields, and that the importation is never raised as a crop by itself.

One of the witnesses testified that the mustard of commerce is known as white mustard and California mustard, and is a cultivated seed, and this view seems to be abundantly supported by the written authorities. Funk & Wagnalls New Standard Dictionary. Two witnesses testified that wild mustard seed is the seed of a noxious weed, which, under certain State laws, it would be unlawful to plant or raise. In trade the importation is referred to as mustard screenings, wild mustard screenings, and wild mustard seed.

In the ruling opinion of the court below great emphasis was laid, and we think properly so, upon the fact that the importation was "never used for any purpose other than the usual one to which grain screenings are devoted—namely, animal feed."

The court below and the importer in its protest quote from Funk & Wagnalls New Standard Dictionary as follows:

Mustard: The seed of the mustard plant crushed and adapted for use (1) as a condiment or (2) as a medical rubefacient.

It is not shown by the record whether or not the kind of mustard which is ordinarily cultivated, the seeds of which are used for human consumption, also grows in a wild state; but if it did, as we understand it, it would be a different species of plant from the wild mustard under consideration.

The importer has laid special emphasis upon the fact that in paragraph 779 is a provision for "mace, unground, 4 cents per pound; ground, 8 cents per pound; Bombay, or wild mace, unground, 18 cents per pound; ground, 22 cents per pound," and points to the fact that this particular expression is followed immediately by the provision for "mustard seeds (whole)," and argues that if it had been the intention of Congress to include wild mustard seed within the paragraph, it would have provided for it by name as in the preceding mace provision.

Mace is the dried arillus of the plant *Myristica fragrans*, and is used as a spice. Nutmeg is the dried seed of the same plant. Bombay or wild mace is the arillus of the fruit of *Myristica malabarica*. On

account of its flavor and its similarity to the arillus of the nutmeg plant, it is used as an adulterant for mace. See Summary of Tariff Information (1921), p. 819. Mace and Bombay or wild mace are, therefore, properly dutiable as spices and are both for human consumption. Congress, for some reason, desired that wild mace should bear a duty of 18 cents per pound, while mace should be dutiable at 4 cents per pound. For this reason, if for no other, it was necessary to provide definitely for both kinds of mace.

If wild mustard seeds, like the importation at hand, were used as a condiment, Congress might have included them within paragraph 779. If they were used as an adulterant for the cultivated mustard, Congress might have provided for wild mustard seeds, whole or ground, at a different rate than the rate applicable to the commercial mustard used as a spice. Since wild mustard seeds are not used as a spice, no provision was made for "wild mustard" in the paragraph, and we do not think the provision for "mustard seeds (whole)" includes the merchandise.

The Government has not discussed in its brief the contention which it made in the statement of the issue above quoted, to the effect that the merchandise is not dutiable under paragraph 731 because of the proviso that "when grains or seeds contain more than 5 per centum of any one foreign matter dutiable at a rate higher than that applicable to the grain or seed the entire lot shall be dutiable at such higher rate." The proviso applies to an importation of grain or seeds which contain foreign matter. The importation at hand is the foreign matter which has been taken from grain or seeds. The purpose of the proviso in the paragraph was to prevent the admixture of wheat and other grains or seeds with foreign matter which is dutiable at a higher rate than the grains and seeds and importing the mixture at the grain or seed rate.

The importation is clearly screenings, and the proviso in the screenings paragraph can not possibly operate to prevent classification of the instant merchandise under it.

The judgment of the United States Customs Court is *affirmed*.