(C. D. 823)

JAMES RICHARDSON & SONS, LTD. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided December 30, 1943)

*Brooks & Brooks* (*Frederick W. Brooks, Jr.,* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Richard H. Welsh, Dorothy C. Bennett,* and *Arthur R. Martoccia,* special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: This is a suit against the United States in which the plaintiff seeks to recover a part of the duty assessed on merchandise entered as 634,400 pounds of oat scalpings. The collector divided the importation, for duty purposes, into two classifications, namely cultivated oats and scalpings. Duty was assessed on the percentage of cultivated oats in the shipment at 8 cents per bushel under paragraph 726 of the Tariff Act of 1930, as modified by the trade agreement with Canada (T. D. 49752) and on the balance of the shipment at 5 per centum ad valorem as scalpings under paragraph 731, as modified by said trade agreement with Canada. The

plaintiff claims that the entire shipment should have been assessed at 5 per centum ad valorem as scalpings under paragraph 731, as modified.

The pertinent provisions in the trade agreement read as follows:

PAR. 726. Oats, hulled or unhulled, 8¢ per bu. of 32 lbs.
PAR. 731. Screenings, scalpings, chaff, or scourings of wheat, flaxseed, or other grains or seeds: Unground, or ground, 5% ad val.

The record shows that the customs officers examined a representative sample of the imported merchandise and segregated the cultivated oats therefrom by hand and found by computation that they were 10.8 per centum of the sample; that the shipment as imported was in fact screenings or scalpings which had been separated in a grain elevator out of shipments of wheat, barley, rye, or flaxseed as an undesirable part of the crop; that the cultivated oats were either unintentionally planted with the wheat, barley, rye, or flaxseed or were carried to the fields by the wind or birds and grew with the main crops; that the cultivated oats cannot be removed from the scalpings commercially by means of any mechanical sieving or screening operation, the only method of removal being by hand-picking which is not commercially practical; that the wild oats in the shipment are seeds of weeds; that the imported commodity falls within the Government inspection class called "mixed feed oats" but prior to the promulgation of the decision in *Rosenbaum Grain Corp.* v. *United States*, 60 Treas. Dec. 541, T. D. 45165, was always classified by the customs officers at the port of New York as oat scalpings and some of the importers testified that they paid duty on such merchandise at 5 or 10 per centum ad valorem as scalpings until 1939 or 1940; that the merchandise has for many years been sold and dealt in either as "oat scalpings" or as "mixed feed oats" and it is used for animal feed; that "mixed feed oats" is a term which was officially adopted by the United States Department of Agriculture as a grading standard in September 1925.

An analysis of the official sample was introduced in evidence and marked "Exhibit 2." The ingredients of the sample noted therein are as follows:

Cultivated oats_____ 10. 8%   Chaff_____ 4. 1%
Wheat_____ 2. 7%   Wild or feed oats_____ 82. 4%

In the case of *C. J. Tower & Sons* v. *United States*, 52 Treas. Dec. 296, T. D. 42452, the court held that the oat scalpings in that case were dutiable at 10 per centum ad valorem under the provision for scalpings in paragraph 731 of the Tariff Act of 1922 rather than at 30 cents per bushel under the provision for wheat under paragraph 729. An official analysis of the sample in that case showed that it contained

9.061 per centum of wheat and the merchandise was classified under the provision for wheat by virtue of the proviso to paragraph 731 reading:

*Provided*, That when grains or seeds contain more than 5 per centum of any one foreign matter dutiable at a rate higher than that applicable to the grain or seed the entire lot shall be dutiable at such higher rate.

The court held that the proviso related to shipments of mixed grains and not to the commodity therein involved, saying:

* * *. We think that means that when there is an importation of grain or seeds as such with which there is mixed a commodity bearing a higher rate of duty the whole shall be considered for duty purposes as though it consisted of the higher value. This importation, however, was not made as a grain or seed, and as a matter of fact it is not a grain or seed. As stated above, it is a mixture of straw, chaff, false oats and here and there a scattering of some other substance.

Substantially the same statement was made with respect to the scope of the same proviso in *United States* v. *International Milling Co.*, 16 Ct. Cust. Appls. 176, T. D. 42809, which related to wild mustard seeds which were screened from wheat. The court held that the merchandise was dutiable as screenings under paragraph 731 of the Tariff Act of 1922.

In *Williamson* v. *United States* and *United States* v. *Williamson*, 8 Ct. Cust. Appls. 277, T. D. 37538, the court held that wheat screenings, consisting of buckwheat, rapeseed, mustard seed, flaxseed, dust, dirt, and broken and spoiled wheat kernels, where the wheat was not commercially separable from the other portion of the screenings, were not classifiable as "wheat" under paragraph 644 of the Tariff Act of 1913 but were dutiable under the provision for nonenumerated unmanufactured articles under paragraph 385. There was no provision in that act for screenings or scalpings.

Both the *C. J. Tower & Sons* and the *International Milling* cases, *supra*, were directed to the attention of Congress in the Summary of Tariff Information of 1929, page 1221, volume 7, under the data on paragraph 731. The description and uses of the merchandise in that paragraph were described on page 1218 as follows:

Description and uses.—Screenings, chaff, and scourings are by-products obtained by grain elevators, millers, and also from the farm thresher. They consist of foreign grains, undeveloped kernels; seeds from weeds, pigeon grass, wild oats, wild buckwheat, etc. They are used principally for live stock and poultry feed, either directly or after going through various stages of separation, or after being mixed with molasses or other feeds. In the large grain centers some companies specialize in the purchase, further separation, and distribution of elevator screenings.

The above review of the legislative history of paragraph 731 seems to indicate that Congress intended that screenings and scalpings of wheat and other grains should be dutiable under that paragraph, no matter what constituents they contained; otherwise, Congress would

.9

have made a change in the provision if it felt that the decisions of the courts under the Tariff Act of 1922 did not properly construe its intent. Nevertheless, another case on the same subject arose under the Tariff Act of 1930, *Rosenbaum Grain Corp.* v. *United States, supra.* The merchandise in that case was classified as oats under paragraph 726 by the collector at the port of Chicago. The merchandise was invoiced as "mixed feed oats" and consisted of wild oats, cultivated oats, foreign material, and other grains. The court expressed the opinion that the commodity was classifiable as screenings or scalpings but, in view of the fact that there was no testimony in the record relating to the source of the goods, held that the cultivated oats should be segregated for duty purposes from the balance of the shipment under the provisions of section 508 and that duty should be assessed on the cultivated oats at 16 cents per bushel under paragraph 726 and on the remainder of the shipment at 10 per centum ad valorem as screenings or scalpings under paragraph 731. An appeal taken from that decision was dismissed. *United States* v. *Rosenbaum Grain Corp.*, 19 C. C. P. A. (Customs) 426.

The source of the commodity in the instant case is fully described in the testimony. It is the scalpings derived from the cleaning of wheat, barley, rye, or flaxseed by machinery in a grain elevator. Such merchandise is specially provided for in paragraph 731 and we hold that the commodity is dutiable at 5 per centum ad valorem under that paragraph, as modified by the trade agreement with Canada, T. D. 49752. The protest is sustained and judgment will be entered in favor of the plaintiff.