(C. D. 919)

C. J. Tower & Sons *v.* United States

United States Customs Court, Third Division

(Decided April 28, 1945)

*Brooks & Brooks* (*Frederick W. Brooks* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Harold L. Grossman*, special attorney), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: This is a suit against the United States arising at the port of Buffalo against the collector's assessment of duty on certain merchandise, known as oat scalpings, screenings, or mixed feed oats, under paragraph 731 of the Tariff Act of 1930. The merchandise, imported from Canada, is claimed free of duty under Public Law 211, approved December 22, 1943 (78th Congress, 1st sess., 57 Stat. 607), or Public Law 272, approved March 29, 1944 (78th Congress, 2nd sess., 58 Stat. 131).

The case was submitted on a stipulation that the merchandise was imported and entered for consumption between December 23, 1943, and January 3, 1944; that it was actually used as feed for livestock and poultry; that the merchandise was the same in all material respects as the oat scalpings, the subject of *James Richardson & Sons, Ltd.* v. *United States*, 12 Cust. Ct. 6, C. D. 823; that the record in C. D. 823 might be incorporated and made part of the record herein.

The pertinent provisions of law follow:

PAR. 731 [as modified by the trade agreement with Canada, T. D. 49752]. Screenings, scalpings, chaff, or scourings of wheat, flaxseed, or other grains or seeds: Unground, or ground, 5 per centum ad valorem.

[Public Law 211] * * * That notwithstanding the provisions of the Tariff Act of 1930, the following, when imported into the United States from foreign countries, and when entered, or withdrawn from warehouse, for consumption, during the period of ninety days beginning with the day following the date of enactment of this joint resolution, to be used as, or as a constituent part of, feed for livestock and poultry, shall be exempt from duty: Wheat, oats, barley, rye, flax, cottonseed, corn, or hay, or products in chief value of one or more of the foregoing or derivatives thereof: * * *.

[Public Law 272] * * * notwithstanding the provisions of the Tariff Act of 1930, the following, when imported into the United States from foreign countries,

and when entered, or withdrawn from warehouse, for consumption, at any time after December 22, 1943, and before June 20, 1944, shall be exempt from duty:

(1) Wheat, oats, barley, rye, flax, cottonseed, corn, or hay, or products in chief value of one or more of the foregoing or derivatives thereof, any of the foregoing if to be used as, or as a constituent part of, feed for livestock and poultry.

\*          \*          \*          \*          \*          \*          \*

The question is whether or not oat scalpings come within the terms of Public Law 211 and Public Law 272. The Code of Federal Regulations, title 19, sec. 58.1 (T. D. 50983), provides:

58.1 *Free entry authorized.* Under the authority of sections 1 and 2 of Public Law 211, approved December 22, 1943, the following products, if entered, or withdrawn from warehouse, for consumption on or after December 23, 1943, and before March 22, 1944, and if actually used in the United States as, or as a constituent part of, feeds for livestock or poultry, are exempt from duty:

(1) Wheat, oats, barley, rye, flax, cottonseed, corn, or hay;
(2) Derivatives of the foregoing;
(3) Products wholly or in chief value of one or more of the products mentioned in (1) and (2) above.

\* \* \*. If the required use is shown, the exemption is applicable to imported derivatives of the products named in Public Law 211, such as feed flour, linseed cake or meal, and cottonseed cake or meal, and is applicable to products in chief value of one or more of the derivatives and/or named products.

The point at issue is whether the merchandise herein, known as oat scalpings, is a "derivative" of wheat, oats, barley, rye, flax, cottonseed, corn, or hay. It has been stipulated that the commodity is the same as that involved in *James Richardson & Sons, Ltd.* v. *United States, supra.* An analysis of the official sample there introduced showed the ingredients to be:

| | | | |
|---|---|---|---|
| Cultivated oats | 10. 8% | Chaff | 4. 1% |
| Wheat | 2. 7% | Wild or feed oats | 82. 4% |

It appears from the testimony then given that the merchandise is undesirable material separated from grains by a screening process, consisting of wild oats with a mixture of tame oats or wheat heads, knuckles, roughage, and chaff. The foreign grains come up with the cultivated crop by reason of impurity in the seed or by being carried to the field by the wind or birds. When the crop arrives at the grain elevator, the grain is cleaned and separated from the scalpings by a mechanical process. The scalpings, after being finely pulverized, are used as cheap feed for animals.

The testimony shows that the term "oat scalpings" is used for the commodity in the trade but that it is also referred to as "mixed feed oats." The term "mixed feed oats" originated in 1922 for the purpose of grading scalpings. Pursuant to the United States Grain Standards Act, regulations have been issued defining mixed feed oats as follows:

Mixed Feed Oats. Mixed feed oats shall be any grain which consists of less than 30 percent of cultivated oats, but either (a) not less than 65 percent of cultivated and wild oats combined, or (b) not less than 65 percent of wild oats; may contain not more than 25 percent of other grains; and may contain not more than

10 percent of foreign material, which 10 percent may include not more than 5 percent of fine seeds (Code of Federal Regulations, title 7, sec. 26.351).

The following definitions are also pertinent:

Oats. Oats shall be any grain which consists of 80 percent or more of cultivated oats. Oats may contain not more than 10 percent of wild oats (Code of Federal Regulations, title 7, sec. 26.251).

Feed Oats. Feed oats shall be any grain which consists of either (a) 30 percent or more but less than 80 percent of cultivated oats, but not less than 65 percent of cultivated and wild oats combined, or (b) 80 percent or more of cultivated oats and more than 10 percent of wild oats. Feed oats may contain not more than 25 percent of other grains, and may contain not more than 10 percent of foreign material, which 10 percent may include not more than 5 percent of fine seeds (Code of Federal Regulations, title 7, sec. 26.301).

The merchandise herein is clearly "mixed feed oats" and not "oats." It has been held that wheat screenings are not wheat (*Williamson* v. *United States*, 8 Ct. Cust. Appls. 277, T. D. 37538; *Tower & Sons* v. *United States*, 11 Ct. Cust. Appls. 489, T. D. 39629) and that flaxseed and screenings were different commodities (*Consolidated Elevator Co.* v. *United States*, 8 Ct. Cust. Appls. 267, T. D. 37536).

Strictly speaking, oat scalpings are not, however, a "derivative" of oats. Webster's New International Dictionary defines "derivative" as follows:

*derivative*, n. That which is derived; anything obtained or deduced from another.

*derivative*, a. Obtained by, arising from, or consisting in, derivation or transmission; derived, transmitted, or educed; hence, not radical, original, or fundamental; originating, deduced, or formed, from something else; secondary; * * *.

Thus a derivative of a particular grain would be something produced from the grain. A derivative of flaxseed, for instance, would be linseed cake, which is defined as "The solid mass or cake which remains when oil is expressed from flaxseed" (Webster's New International Dictionary).

Counsel for the plaintiff, in referring to the case of *James Richardson & Sons* v. *United States, supra*, states:

It will be noted that this Court, in describing the source of the commodity, stated that it is the scalpings *"derived"* from the cleaning of wheat, barley, rye or flax seed by machinery in a grain elevator and also described the merchandise as scalpings *produced as a byproduct* in cleaning wheat, barley, rye or flax seed in grain elevators.

What this court said is:

The source of the commodity in the instant case is fully described in the testimony. It is the scalpings *derived from the cleaning of wheat,* barley, rye, or flaxseed by machinery in a grain elevator. [Italics ours.]

That, of course, is quite different from stating that the scalpings themselves are derived from oats.

We believe, however, that an examination into the circumstances surrounding the enactment of the provision under consideration will

show that the intent of Congress would be frustrated by a strict construction of the language. The intention of Congress is the all important factor. *United States* v. *Stone & Downer Co.*, 274 U. S. 225. At the time the joint resolution was passed, drought conditions existed in many areas of the United States causing shortages of feed for livestock, during a period when increased production of poultry and livestock was demanded because of war conditions (Report of Ways and Means Committee of the House of Representatives, 78th Cong., 1st sess., report No. 921; Report of Finance Committee of the Senate, 78th Cong., 1st sess., report No. 607.) An examination of the debates in Congress, especially in the House of Representatives, indicates that the purpose of the resolution was to make every effort to provide feed for the livestock of the country. The resolution as originally introduced did not include corn because it was felt that no corn would be available for importation during the 90-day period. However, corn was added when it was indicated that some corn from Argentina might be available. We believe the Congress intended that for a limited period all types of feed grains and their products should be admitted free of duty and that the word "derivative" was intended to include byproducts, such as scalpings, as well as actual derivatives, such as linseed cake. Since the statute is a remedial one enacted because of an emergency, it should be liberally construed. *Klein, Messner Co.* v. *United States*, 13 Ct. Cust. Appls. 273, T. D. 41212. "A remedial statute ought not to be so construed as to defeat in part the very purpose of its enactment." *Beley* v. *Naphtaly*, 169 U. S. 353, 361.

We hold, therefore, that the merchandise herein is entitled to free entry under Public Law 211 and Public Law 272. The protest is sustained. Judgment will be rendered in favor of the plaintiff directing the collector to reliquidate and make refund accordingly.