(C. D. 1061)

## C. S. EMERY & Co. v. UNITED STATES

United States Customs Court, Third Division

(Decided August 1, 1947)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff. *Paul P. Rao*, Assistant Attorney General (*Richard H. Welsh* and *William J. Vitale*, special attorneys), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; JOHNSON, J., not participating

CLINE, Judge: This is a suit against the United States arising at the port of St. Albans, protesting the collector's assessment of duty on merchandise invoiced as "hulled oats." It was described by the appraiser as "Mixed feed oats, hulled, with meager wheat, broken barley, weed seeds, etc.," was advisorily classified as a nonenumerated manufactured article at 20 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930, and duty was so assessed by the collector. Although many claims which were not waived are made in the protest, plaintiff relies principally upon the claims that the merchandise is properly dutiable under paragraph 726 of the Tariff Act of 1930, as modified by the trade agreement between Canada and the

United States (T. D. 49752), as "Oats, hulled or unhulled" at 8 cents per bushel of 32 pounds; or under paragraph 731 of said act, as amended by the trade agreement between Canada and the United States, (T. D. 49752), at the rate of 5 per centum ad valorem, as "Screenings, scalpings, chaff, or scourings of wheat, flaxseed, or other grains or seeds: Unground, or ground,"; or, if the merchandise is unenumerated, it is an unenumerated unmanufactured article under the provisions of paragraph 1558 and dutiable at 10 per centum ad valorem, rather than as a manufactured article, unenumerated.

The plaintiff's witness was the division manager in charge of all operations of the Fort William plant of the Ogilvie Flour Mills Co., Ltd., the shipper of the merchandise herein. He testified that only the feeding product is produced at the particular plant from which the merchandise was shipped. According to the witness, hulled oats for feeding purposes are produced by an entirely different process than oats, hulled, and intended for human consumption. In his opinion, there is only one product known as hulled oats and it would include the merchandise at bar. The processes used to obtain the hulled oats such as here imported were stated by the witness to be as follows:

Q. Will you please describe the merchandise and the process to the court?— A. In the first place, mixed feed oats are derived from the cleaning of grain, that is, mixed feed oats are taken off wheat, and wheat is cleaned in a commercial elevator; and mixed feed oats is also derived from the cleaning of barley, in the handling of barley into a commercial elevator. Therefore, in these mixed feed oats, in the first place, as the feed plant would receive them from the elevator, there would be bound to be a certain quantity of wheat and a certain quantity of barley.

\* \* \* \* \* \* \*

The WITNESS: After the feed plant receives the mixed feed oats from the elevator they are put over in a cleaner which takes out, if there were any seeds or dust, or anything of that kind—does not take out the foreign grain, which is wheat or barley.

Those mixed feed oats then go to what we call our Roscoe Oat Elevator. It is an oat elevator which is made primarily for the feed trade. It does a very good job, but perhaps not 100 percent job; that is not to be expected for a feed purpose.

When these oats are hulled there is a small percentage of the wild oats still in them which has not been hulled, and there would also be a percentage of wheat and barley. That might run—that foreign grain might run 5 percent, it might run 10 percent, might only run 1 percent. There is a great variation in these mixed feed oats. Therefore, the product as shipped would be bound to contain a small sprinkling of unhulled, wild oats, small sprinkling of wheat, and a small sprinkling of barley. (Record pp. 10–12.)

The witness described mixed feed oats as the lowest classification of oats derived from the cleaning in a commercial elevator of grains, such as wheat and barley, and that the product in question would consist of hulled mixed feed oats with a sprinkling of barley, wheat, and unhulled oats, but no straw or chaff. He was of the opinion that a low grade oat is bound to contain some foreign seeds.

The customs appraiser at the port of entry testified on behalf of the Government that the merchandise consisted of the meats or groats of mixed feed oats. He and the plaintiff's witness were in agreement that the merchandise is known and classified in the United States as scalpings. From his examination of the merchandise, he stated that there was only a very small amount of oats which were not hulled. In his opinion, it would be impossible to estimate the percentage of wild oats actually in the importation because after hulling they are so similar in size to the hulled screenings from cultivated oats that no distinction can be made. In the opinion of the witness, the term "mixed feed oats" is applied to screenings from the oat grains which contain a large percentage of wild oats, deformed oats, and light oats of the cultivated variety, and such are known as mixed feed oats whether they contain a large percentage of the wild oats or a large percentage of definite screenings.

The witness further testified that he estimated that there was 60 to 80 per centum of wild oats. Such estimate was based on the usual percentage of wild oats contained in unhulled mixed feed oats. The other 20 per centum, according to the witness, is composed of scalpings of cultivated oats. As to the correct commercial name for the imported commodity, he stated he was of the opinion that it was hulled oats, though the commodity was also known as groats when in that condition. Although the term "scalpings" is applied to mixed feed oats, he was of the opinion that the hulled parts from the scalpings are simply mixed feed oats, hulled.

The question presented is whether mixed feed oats which have been hulled are dutiable under the provision for oats, hulled or unhulled, or as scalpings of grains or seeds, ground or unground, rather than as a nonenumerated manufactured article.

Paragraph 1558 of the Tariff Act of 1930, under which duty was assessed, reads as follows:

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

The pertinent provisions of the trade agreement between the United States and Canada, dated January 1, 1939 (T. D. 49752), read as follows:

PAR. 726. Oats, hulled or unhulled 8¢ per bu. of 32 lbs.

PAR. 731. Screenings, scalpings, chaff, or scourings of wheat, flaxseed, or other grains or seeds: Unground or ground, 5% ad val.

Counsel for the plaintiff relies upon the case of *Forrest* v. *United States*, 8 Cust. Ct. 321, C. D. 629, for the classification of the imported merchandise under paragraph 726, and *Richardson* v. *United States*, 12 Cust. Ct. 6, C. D. 823, to bring the merchandise within the classification of screenings provided for in paragraph 731.

The classification of screenings and of oats has been the subject of decision before this court and the Court of Customs and Patent Appeals over a period of years. In *Consolidated Elevator Co.* v. *United States*, 8 Ct. Cust. Appls. 267, T. D. 37536, screenings were held to be a merchantable commercial product, easily segregable from flaxseed, rather than an impurity assessed at the same rate as flaxseed. In the absence of a specific provision for screenings in the Tariff Act of 1913, it was held dutiable as a nonenumerated unmanufactured article.

*Williamson* v. *United States*, 8 Ct. Cust. Appls. 277, T. D. 37538, involved screenings. The Board of General Appraisers found that the wheat contained therein was segregable for duty purposes. Our appellate court held that screenings, as an entirety, were a merchantable product, no part of which was subject to duty under the wheat schedule.

In *Tower* v. *United States*, 52 Treas. Dec. 296, T. D. 42452, oat scalpings, a residual product from the separation of wheat, consisting of a mixture of various kinds of grains, including a large quantity of oats, were held dutiable as screenings under paragraph 731, Tariff Act of 1922.

In *United States* v. *International Milling Co.*, 16 Ct. Cust. Appls. 176, T. D. 42809, wild mustard seeds screened from wheat were classified by the collector as whole mustard seeds. The court held the product to be screenings, interpreting the higher rate proviso in paragraph 731 as applicable to importations of grain or seeds which contain foreign matter, but not applicable to an importation of the foreign matter which has been removed from grain or seeds, such as screenings.

In *Rosenbaum Grain Corp.* v. *United States*, 60 Treas. Dec. 541, T. D. 45165, certain mixed feed oats which were assessed for duty as oats at 16 cents per bushel under paragraph 726 were claimed dutiable as screenings or scalpings. The product contained 82.3 per centum wild oats, 6.5 per centum sound cultivated oats, 7.9 per centum other grains, and 3.3 per centum foreign material. The court noted that wild oats were included as one of the grains and that mixed feed oats contained not less than 65 per centum of cultivated oats and wild oats combined, according to the Handbook of Official Grain Standards, issued by the Department of Agriculture. However, the court held that as Congress provided for oats without qualification, except that they be hulled or unhulled—

\* \* \* it must be presumed that it was legislating concerning the commodity that had been defined as oats by the official grain standards and which was being bought and sold in the commerce of the United States as oats under such standards.

The court then held that the term "wild oats" mentioned in that Handbook was excluded from the unqualified term of "oats"; that the cultivated oats therein were to be held dutiable as oats, hulled or

unhulled; and that the wild oats and the other ingredients in the screenings were dutiable as screenings under paragraph 731.

*Tower* v. *United States*, 25 C. C. P. A. 408, T. D. 49486, involved certain ground oat groats, composed of oat groats, barley, wheat, wheat seeds, buckwheat, straw, and oat hulls, not removed in the hulling process, ground together. The product was not the residuum from the separation of grain. The court considered the entire schedule of cereal paragraphs of the Tariff Act of 1930 and came to the conclusion that—

The merchandise involved is neither "oats, hulled or unhulled," nor unhulled ground oats. No one contends here that the merchandise falls within either of these provisions. Since we conclude, for the reasons heretofore stated, that the merchandise at bar is not oatmeal, rolled oats, oat grits, or a similar oat product, it follows that the same is not properly dutiable under said paragraph 726.

In *Forrest* v. *United States*, *supra*, certain hulled oats, known as feeding oats, not fit for human consumption, were assessed for duty at 16 cents per bushel under paragraph 726 as hulled oats. The plaintiff contended that the feeding oats should have been excluded from paragraph 726 because they were unfit for human consumption, citing as authority *Tower* v. *United States*, *supra*, and *Forrest* v. *United States*, 2 Cust. Ct. 425, C. D. 169, involving certain feeding rolled oats. The court found, however, that the provision for "oats, hulled or unhulled," in the first sentence of paragraph 726, was not considered in either of the decisions cited, and that there was nothing in the language to indicate that the provision is restricted to such as are fit for human consumption. Reviewing the description given in the Summary of Tariff Information of 1929 for oats, wherein it is stated that 85 per centum of the domestic oat crop is fed to livestock and only 4 per centum is used to make oatmeal, the court was of the opinion that Congress, in writing the provision, could not have intended to limit it to products suitable for human consumption without using words definitely signifying that intent, and therefore hulled oats, known as feeding oats, were held properly classifiable as oats, hulled or unhulled, under the provisions of paragraph 726.

In *Richardson* v. *United States*, 12 Cust. Ct. 6, C. D. 823, the imported product consisted of oat scalpings. Duty was assessed on the 10.8 per centum cultivated oats contained therein at 8 cents per bushel under paragraph 726, as amended. On the remaining 2.7 per centum wheat, 4.1 per centum chaff, and 82.4 per centum wild or feed oats, duty was assessed at 5 per centum ad valorem as scalpings under paragraph 731, as amended. The court was of the opinion that Congress, in writing the provisions, intended that screenings and scalpings should be dutiable under that paragraph, no matter what constituents they contain.

The evidence before us discloses that the imported commodity consists of screenings from wheat or barley composed principally of

wild oats intermingled with cultivated oats, having a slight wheat and barley content, and that these oats have been hulled. From the foregoing cited cases, it would appear that screenings, before specific provision was made therefor in the statute, were held dutiable as a nonenumerated unmanufactured article. Such screenings were considered an entirety, no part of which could be segregated therefrom and assessed separately for duty. Nor could screenings, when composed largely of one class of grain or seed, as in the case of the wild mustard seeds, be classified under the provision for such grain or seeds. Wild oats were held not to come within the term "oats."

In the *Forrest* case, cited and relied upon by the plaintiff, the merchandise was agreed between counsel to consist of hulled oats, known as feeding oats, not fit for human consumption. There was nothing to indicate that such hulled oats were derived from screenings of grain or that they contained any wild oats. In view of the fact that the major portion of the oat crop is fed to domestic animals, the court held that Congress could not have intended to limit the provision for "oats, hulled or unhulled" to such as was suitable for human consumption. We have an entirely different situation before us here. The importation in question consists of the screenings of wheat or barley, composed largely of wild oats which have been hulled. The *Forrest* case, therefore, would not have any application to the importation in question, in view of the *Williamson* case, *supra*. In the *Richardson* case, on the other hand, the importation consisted of oat scalpings, and the court held that screenings and scalpings should be dutiable under the *eo nomine* provisions therefor, no matter what constituents they contain. That seems to be the situation in the case here. Whether the oats contained in the scalpings are hulled or unhulled, they still remain the screenings or scalpings from wheat or barley, and therefore are more specifically provided for under paragraph 731 than under paragraph 726, and we so hold.

For the reasons stated, judgment will be entered in favor of the plaintiff directing the collector to reliquidate the entry assessing duty thereon at the rate of 5 per centum ad valorem under paragraph 731, as amended by T. D. 49752, and make refund in accordance with law.