(C. D. 1068)

RALPH BOONE *v.* UNITED STATES

United States Customs Court, Third Division

(Decided October 29, 1947)

*Harper & Harper (George R. Tuttle* and *Charles J. Evans,* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Joseph E. Weil,* special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

JOHNSON, Judge: This action arises by way of protest filed by the plaintiff against the classification by the collector at the port of San Diego of a carload of barley bran as a nonenumerated manufactured article and his assessment of duty thereon at 20 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930. The plaintiff claims that the merchandise is dutiable at 5 per centum ad valorem under paragraph 730, by virtue of the trade agreement with Canada, T. D. 49752, as byproduct feeds obtained in milling wheat or other cereals, or as a mixed feed at the same rate, as provided in said paragraph and trade agreement, or as a waste at 7½ per centum ad valorem under paragraph 1555, as amended by the trade agreement with Mexico, T. D. 50797. By way of amendment of the protest it is further claimed that the merchandise is classifiable as screenings under the provisions of paragraph 731, Tariff Act of 1930, as amended by the second Canadian Trade Agreement, T. D. 49752, at 5 per centum ad valorem.

The merchandise in question, according to the evidence, is prepared in the same manner as the barley bran in dispute in the case of *Mary G. Ricks* v. *United States,* 33 C. C. P. A. 1 (Customs), C. A. D. 308. The record in that case consisted solely of the record and evidence in the case of *Mary G. Ricks* v. *United States,* 7 Cust. Ct. 63, C. D. 535, involving barley bran. One of the witnesses testifying therein was Alberto Victor Aldrete, Jr., the vice president of the foreign producing company. Mr. Aldrete's testimony therein was incorporated with and made a part of the record herein.

In the pending case the claim is made for the first time that barley bran is classifiable as screenings and the plaintiff relies solely upon that claim, although not abandoning the other claims made in the protest.

Alberto Victor Aldrete, Sr., the president of the foreign producing company, testified on behalf of the plaintiff in the pending case. The Government produced no witnesses. The witness testified that he was in complete agreement with the method of production of the barley bran as stated by his son, Alberto Victor Aldrete, Jr., and summarized by the Court of Customs and Patent Appeals in C. A. D. 308, *supra*, as follows:

\*      \*      \*      \*      \*      \*      \*

The imported product, which is used in this country to feed cattle, is produced in the malt-making operation in the following manner: The barley, after it is received from the field, is elevated to the top of the work tower in the malt-producing plant of the Compania Mexicana de Malta, S. A., located at Tecate, Mexico. At the top of the tower it is deposited in a bin, and from there it passes by gravity through a series of machines which separate and remove certain components of the barley which are not wanted in the manufacture of the main product—malt. These components comprise beards, awns, foreign seeds such as wheat, broken grains, straw, etc. The barley which has been screened and cleaned as aforesaid is then put into a tank of water, where it remains until it has absorbed about 46 per centum of water. It is next placed in germinating drums, where it remains 6 days; and germination is then stopped and the moisture is drawn off by hot air, leaving barley malt with sprouts attached. Next the malt is elevated to the top of the tower, from which it works down by gravity through the debearder and the malt cleaner, *and the sprouts and screenings are removed*, making the malt ready for sale to brewers. The malt is not ground in the plant, but is ground by the malt users. Malt of this character is specially provided for in the tariff act, and we are not here concerned with that product. Malt sprouts are also specifically provided for.

In the separating processes, pieces of straw, foreign seeds, wheat, and broken kernels are separated by various kinds of machinery; and they, together with the sprouts—in other words, all except the malted grains with some hull, much of which has been removed—are collected and run through a hammer mill, where the mass is beaten to a fine consistency. It is in that condition that the involved merchandise is imported into this country and sold as barley bran. [Italics not quoted.]

The witness further testified in answer to the question as to the quantity of barley sprouts in the mixture that it contained between 3 and 5 per centum and sometimes less than 3 per centum by weight, and that barley will not sprout more than 6 per centum of sprouts by weight. The witness admitted that he had never determined the percentage of sprouts in barley malt by weight as that was obtained through laboratory analysis and accepted by the trade. Nor was he familiar with the percentage of sprouts in barley malt by volume.

In regard to the quantity of sprouts in the imported commodity, the testimony of the witness, incorporated herein, is as follows:

X Q. Now, would you say that the imported merchandise consists of 15% of

malt sprouts and 85% of barley screenings, grain barley and barley bran?—A. No, sir; the sprouts are less than that amount.

X Q. Less than 15%?—A. I would say that the sprouts run between 2 and 3%.

X Q. That is all?—A. That is all.

X Q. And that 97 to 98% represents the barley screenings, the grain barley, and the barley bran; is that correct?—A. Correct.

\*          \*          \*          \*          \*          \*          \*

X Q. That you say it runs from 3 to 4%?—A. Yes; it is an error.

X Q. Do you mean by weight or volume?—A. By weight.

X Q. What about volume?—A. In volume, the percentage might possibly be what Mr. Gottfried stated.

X Q. That is 15%; is that correct?—A. Correct.

(Record pp. 25/26, protest 10358–K.)

Both witnesses testified that in all of their commercial transactions they never had heard of there being from 15 to 20 per centum by bulk of sprouts in barley bran. Both also testified that the proportion of malt is determined in the trade by weight and not by volume.

The plaintiff contends that as the merchandise consists of beards, awns, foreign seeds, such as wheat, broken grains, straw, sprouts, all various materials which are not wanted in the production of malt and which are separated or screened from barley by machinery during the process of converting the barley into malt, and finally are ground into a fine consistency, it comes within the scope of paragraph 731, as screenings.

The Government, on the other hand, contends that the merchandise is more than screenings; that is, it is screenings plus the barley or malt sprouts, which represent 15 per centum of the imported merchandise.

If the commodity before the court is nothing more than screenings of grains or other seeds, it comes directly within the classifiable provision for screenings. If, however, it is a mixture of screenings and some other material such as barley malt, it becomes a grain commodity which is the residue or byproduct of a manufacturing process. As such, it would be removed from the screenings provision and, for want of a specific tariff classification, would be relegated to the so-called catch-all provision for nonenumerated manufactured articles. That is the question presented in the pending case.

Paragraph 731 of the Tariff Act of 1930, as amended by the Canadian Trade Agreement, T. D. 49752, provides as follows:

| Tariff Act of 1930: paragraph | Description of article | Rate of duty |
| --- | --- | --- |
| 731 _____ | Screenings, scalpings, chaff. or scourings of wheat, flaxseed, or other grains or seeds: Unground or ground. | 5% ad val. |

Paragraph 1558 of the Tariff Act of 1930, so far as pertinent, provides as follows:

PAR. 1558. That there shall be levied, collected, and paid * * * on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

The merchandise in question consists of screenings of barley and screenings or scourings of malt, a percentage of which is malt sprouts removed in the cleaning process of the malt grains. The two witnesses for the plaintiff were in substantial agreement as to the quantity of sprouts in the merchandise. One witness put the quantity as between 3 and 5 per centum and the other as between 2 and 3 per centum, or 3 and 4 per centum. Neither of the witnesses professed to know anything concerning the percentage by bulk or volume of the sprouts in the importation. Nor did witnesses for the plaintiff attempt to contradict the repeated contention of Government counsel that the sprouts constituted 15 per centum of the total bulk of the merchandise inasmuch as they were not familiar with the volume content of the materials.

Moreover, if the evidence before the court were conclusive that the sprouts per se were deliberately mixed with the barley screenings, then in such case the Government's position might be tenable. But no such evidence appears of record. The evidence is conclusive that the sprouts were a part of the material screened from the malt in the cleaning process. Such material consisted of light grains, some hulls, dust, and sweepings, as well as the sprouts. The screenings from the malt were mixed with the screenings from the barley and both were ground together to produce the imported merchandise. Together they form the total foreign matter removed from grain or seeds. The mere contention on the part of Government counsel that sprouts constituted 15 per centum of the total bulk of the merchandise without any corroborative evidence is clearly insufficient to overcome the uncontradicted evidence of two witnesses that the sprouts in the material ranged from 2 to 5 per centum by weight.

There does not seem to be any point in the Government's contention that the commodity is something more than screenings. The mixing of the sprouts in the commodity was not a deliberate act of the processors and cannot be classed as matter foreign to the screenings in question. Consequently the quantity of malt sprouts in the screenings is entirely immaterial.

In the foregoing contentions the Government relies on the case of the *Union Supply Co.* v. *United States*, 67 Treas. Dec. 631, T. D. 47645. That case involved the classification of a cooked mixture of ground pork and whole green peas. The court held that the peas contained in the mixture removed it from classification under the

provision for prepared pork because it was "something more than pork." That case would have no application here. First, the screenings provision contemplates the inclusion of an unwanted material derived from processing grains; and second, malt sprouts are within the general provision for "scourings of * * * grains or seeds" even though specifically provided for in the act. If the importer were attempting to establish that the commodity was classifiable as malt sprouts, the *Union Supply Co.* case might have some application. Since, however, the plaintiff seeks a classification for the merchandise of screenings, the quantity of the sprouts in the screenings resulting from the scourings of grains or seeds becomes unimportant, particularly in view of the decision of the Court of Customs Appeals, now the Court of Customs and Patent Appeals, in the case of *United States* v. *International Milling Co.*, 16 Ct. Cust. Appls. 176, T. D. 42809. That case involved an importation of wild mustard seeds screened from wheat. The collector assessed duty at the rate applicable to whole mustard seed. The court held the product to be screenings, even though consisting of wild mustard seed. It interpreted the higher rate proviso of paragraph 731, Act of 1922, as applicable to grain or seeds which contain foreign matter, but not applicable to foreign matter such as wild mustard seeds which had been removed from grain or seeds. In our opinion, the sprouts in the pending case are a part of the foreign matter removed from malt grain in preparing it for brewers' use. The court's decision in *Williamson* v. *United States*, 8 Ct. Cust. Appls. 277, T. D. 37538, bears the same signification. There, certain screenings of wheat were held by the Board of General Appraisers to be segregable for dutiable purposes, the wheat therein being dutiable as wheat, and the remaining threshed material dutiable as a nonenumerated manufactured article, there being no provision for screenings in the tariff at that time [Act of 1913]. But on appeal, the appellate court reversed the lower court holding that inasmuch as the imported product was the result of processes of screening applied to threshed material in order to separate the merchantable wheat from the impurities and undesirable grains, including shriveled, broken, and defective wheat grains, commercially impracticable to remove, such wheat cannot be subjected to the duty prescribed by the wheat tariff. The entire importation was held dutiable as a nonenumerated unmanufactured article.

In *Tower* v. *United States*, 52 Treas. Dec. 296, T. D. 42452, scalpings containing approximately 9 per centum of wheat and 76 per centum of oats (not 2 to 5 per centum as in the pending case) were held properly dutiable as screenings, although the oats and also the wheat were specifically provided for in the tariff act. Also in *Richardson* v. *United States*, 12 Cust. Ct. 6, C. D. 823, on an importation of

oat scalpings, where the collector had assessed duty under a specific provision for oats upon a content of 10.8 per centum cultivated oats, the court was of the opinion that Congress intended screenings and scalpings to be dutiable under the paragraph specifically providing therefor, no matter what constituents they might contain.

We are of the opinion that the barley bran in the pending case is screenings and nothing else, and that as screenings it is properly dutiable as claimed by the plaintiff. It is abundantly clear that it was not the intent of Congress in the enactment of the tariff provision in question to draw such a fine distinction as Government counsel is attempting to do in this case.

Judgment will therefore be entered in favor of the plaintiff directing the collector to reliquidate the entry and make refund in accordance with law.