**No. 54528.**—Ralph Boone *v.* United States, protests 101808–K and 128755–K (San Diego).

JOHNSON, Judge: This action arises by way of protest filed by the plaintiff against the classification of the collector at the port of San Diego in assessing for duty certain barley bran as a nonenumerated manufactured article at the rate of 20 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930. The plaintiff claims that the barley bran is properly dutiable at 5 per centum ad valorem under paragraph 731, by virtue of the trade agreement with Canada, T. D. 49752, as screenings, or at 7½ per centum ad valorem under paragraph 1555, as amended by T. D. 49752 and the trade agreement with the United Kingdom, T. D. 49753, as waste.

The superintendent of the malt plant of the exporter testified for the plaintiff that the barley is cleaned and then placed in a bin until ready for use. It is then weighed and placed into steep tanks where it comes in contact with water, remaining there from 38 to 58 hours, or until the barley contains 50 per centum moisture. From the steep tanks, the barley is put into the germinating drums where growth starts. The barley remains therein for 6 days, or until the starch in the barley is converted to sugar. Thereafter, the barley is placed in kilns for a drying process, where it remains until there is only 3.5 per centum of moisture left. The sprouts are then cleaned off the barley by means of shakers, and the malt remains.

The witness further testified that the malt sprouts are kept entirely separate from the residue from the first screening of the barley; that in making the bran in question, 2 sacks of the barley screenings, weighing close to 300 pounds, are mixed with 1 sack of malt sprouts, which weighs from 60 to 75 pounds; that it is a 2-to-1 mix and as such is placed in a hammer mill where it is ground into a rather fine finished product.

The plaintiff contends that the product in question is the same as that the subject of decision in the case of *Ralph Boone* v. *United States*, 19 Cust. Ct. 62, C. D. 1068, wherein it was held that barley bran was properly dutiable as screenings under paragraph 731, as amended.

The Government, on the other hand, contends that the barley bran in question was established by the plaintiff to have been deliberately mixed at a specific ratio, and thus is a mixture of a separately manufactured article with screenings.

Therefore, it is contended that the screenings plus the malt sprouts are something more than screenings and properly dutiable as assessed by the collector, citing. *Union Supply Co.* v. *United States*, 67 Treas. Dec. 631, T. D. 47645.

In the case of *Ralph Boone, supra,* in holding that barley bran was properly dutiable as "Screenings, scalpings, chaff, or scourings of * * * grains or seeds, * * * ground," this court construed the provision for screenings as follows:

* * * First, the screenings provision contemplates the inclusion of an unwanted material derived from processing grains; and second, malt sprouts are within the general provision for "scourings of * * * grains or seeds" even though specifically provided for in the act.

In commenting on the *Union Supply Co.* case, *supra,* relied upon by the Government, the court stated:

* * * If the importer were attempting to establish that the commodity was classifiable as malt sprouts, the *Union Supply Co.* case might have some application. Since, however, the plaintiff seeks a classification for the merchandise of screenings, the quantity of the sprouts in the screenings resulting from the scourings of grains or seeds becomes unimportant, particularly in view of the decision of the Court of Customs Appeals, now the Court of Customs and Patent Appeals, in the case of *United States* v. *International Milling Co.*, 16 Ct. Cust. Appls. 176, T. D. 42809. That case involved an importation of wild mustard seeds screened from wheat. The collector assessed duty at the rate applicable to whole mustard seed. The court held the product to be screenings, even though consisting of wild mustard seed. It interpreted the higher rate proviso of paragraph 731, Act of 1922, as applicable to grain or seeds which contain foreign matter, but not applicable to foreign matter such as wild mustard seeds which had been removed from grain or seeds. In our opinion, the sprouts in the pending case are a part of the foreign matter removed from malt grain in preparing it for brewers' use. The court's decision in *Williamson* v. *United States,* 8 Ct. Cust. Appls. 277, T. D. 37538, bears the same signification. There, certain screenings of wheat were held by the Board of General Appraisers to be segregable for dutiable purposes, the wheat therein being dutiable as wheat, and the remaining threshed material dutiable as a nonenumerated manufactured article, there being no provision for screenings in the tariff at that time [Act of 1913]. But on appeal, the appellate court reversed the lower court holding that inasmuch as the imported product was the result of processes of screening applied to threshed material in order to separate the merchantable wheat from the impurities and undesirable grains, including shriveled, broken, and defective wheat grains, commercially impracticable to remove, such wheat cannot be subjected to the duty prescribed by the wheat tariff. The entire importation was held dutiable as a nonenumerated unmanufactured article.

In *Tower* v. *United States,* 52 Treas. Dec. 296, T. D. 42452, scalpings, containing approximately 9 per centum of wheat and 76 per centum of oats (not 2 to 5 per centum as in the pending case) were held properly dutiable as screenings, although the oats and also the wheat were specifically provided for in the tariff act. Also in *Richardson* v. *United States,* 12 Cust. Ct. 6, C. D. 823, on an importation of oat scalpings, where the collector had assessed duty under a specific provision for oats upon a content of 10.8 per centum cultivated oats, the court was of the opinion that Congress intended screenings and scalpings to be dutiable under the paragraph specifically providing therefore, no matter what constituents they might contain.

We are of the opinion that the barley bran in the pending case is screenings and nothing else, and that as screenings it is properly dutiable as claimed by the plaintiff. It is abundantly clear that it was not the intent of Congress in the enactment of the tariff provision in question to draw such a fine distinction as, Government counsel is attempting to do in this case.

The Court of Customs and Patent Appeals, in the case of *E. C. Lineiro* v. *United States,* 37 C. C. P. A. 10, C. A. D. 411, cited the case of *C. J. Tower & Sons* v. *United States,* 25 C. C. P. A. (Customs) 408, 412, T. D. 49486, where the said court had "directed attention to the fact that in the enactment of the involved legislation, and in accordance with its established policy for a great number of years,

the Congress had evinced an intention of providing a low rate of duty upon stock and poultry feeds."

We are of the opinion that the barley bran in question in the pending case is screenings and nothing more, and therefore is properly dutiable as claimed by the plaintiff at the rate of 5 per centum ad valorem under paragraph 731, as amended by T. D. 49752.

Judgment will therefore be entered in favor of the plaintiff directing the collector to reliquidate the entries and refund all duties taken in excess, in accordance with law.

### DISSENTING OPINION

CLINE, Judge: I regret that I am unable to agree that the merchandise involved herein consists of screenings and nothing more.

The merchandise was invoiced and entered as "barley bran" and was assessed with duty at 20 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930 as an unenumerated manufactured article. It is claimed to be properly dutiable at 5 per centum ad valorem under paragraph 731, as modified by the trade agreement with Canada, T. D. 49752, or at 7½ per centum ad valorem under paragraph 1555, as modified by said trade agreement.

It appears from the evidence that when barley first arrived at the processing plant it was cleaned and the cleaned barley was used in the manufacture of malt. During the course of manufacture, malt sprouts were produced and were subsequently cleaned out of the malt. Thereafter, they were mixed with the foreign material which had already been screened from the barley in a ratio of one-third sprouts to two-thirds barley screenings and the two commodities were ground up together. This ground mixture is the imported merchandise.

According to the record, the merchandise was produced by the same manufacturer who produced that involved in *Ralph Boone* v. *United States*, 19 Cust. Ct. 62, C. D. 1068. In that case it appeared that the mixture contained 3 to 5 per centum barley sprouts while the mixture here consists of one-third barley sprouts. In that case the mixture was held to be screenings. In the course of its opinion the court said (p. 65):

Moreover, if the evidence before the court were conclusive that the sprouts *per se* were deliberately mixed with the barley screenings, then in such case the Government's position might be tenable. But no such evidence appears of record. The evidence is conclusive that the sprouts were a part of the material screened from the malt in the cleaning process. Such material consisted of light grains, some hulls, dust, and sweepings, as well as the sprouts. The screenings from the malt were mixed with the screenings from the barley and both were ground together to produce the imported merchandise. Together they form the total foreign matter removed from grain or seeds. * * *

There does not seem to be any point in the Government's contention that the commodity is something more than screenings. The mixing of the sprouts in the commodity was not a deliberate act of the processors and cannot be classed as matter foreign to the screenings in question. Consequently the quantity of malt sprouts in the screenings is entirely immaterial.

In the instant case it appears that the malt sprouts were deliberately mixed with the barley screenings by the processors in a definite ratio. The holding in the *Boone* case, *supra*, is therefore not applicable.

The malt sprouts involved herein are not screenings in the generally accepted sense. According to the testimony, they are produced when the cleaned barley is placed in germinating drums in the process of making malt. Screenings are generally understood to be the residue derived from the cleaning of grain by machinery in a grain elevator. *James Richardson & Sons, Ltd.* v. *United States*, 12 Cust. Ct. 6, C. D. 823; *Consolidated Elevator Co.* v. *United States*, 8 Ct. Cust. Appls. 267, T. D. 37536; *Williamson* v. *United States*, 8 Ct. Cust. Appls. 277,

T. D. 37538. The malt sprouts were not a part of the grain when it was brought from the fields to the grain elevator. They were not derived from the cleaning of grain at that time but were produced later in the course of manufacturing malt. The mere fact that they were subsequently cleaned out of the malt does not make them screenings. Congress provided specifically for malt sprouts in paragraph 730 of the tariff act; therefore, it is apparent that they were considered to be a distinct commodity from screenings. They might be considered screenings or a part thereof in cases where they were a part of the foreign matter removed from the grain when it was cleaned in the grain elevator, but not when deliberately produced later.

Since the merchandise herein consists of screenings of barley mixed with malt sprouts and ground together, and since malt sprouts are a commodity distinct from screenings, the mixture is properly dutiable under paragraph 1558 as an unenumerated manufactured · article. For that reason the protest should be overruled.