(C. D. 1082)

GEO. S. BUSH & CO., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided February 4, 1948)

*Lawrence & Tuttle* (*George R. Tuttle* and *Chas. J. Evans* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Joseph E. Weil* and *Richard F. Weeks*, special attorneys), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; EKWALL, J., dissenting

CLINE, Judge: This is a suit against the United States arising out of the collector's assessment of duty on certain merchandise, described in the invoices as mixed feed oats, under paragraphs 726 and 731 of the Tariff Act of 1930, as modified by the trade agreement with Canada, T. D. 49752. It is claimed that the merchandise is free of duty under Public Law 211, approved December 22, 1943 (57 Stat. 607), or Public Law 272, approved March 29, 1944 (58 Stat. 131).

Three entries are involved herein. Entry No. 083, dated January 22, 1944, covers merchandise imported from Canada on January 19, 1944; entry No. 0112, dated March 6, 1944, covers merchandise imported from Canada on March 3, 1944; and entry No. 0121, dated March 16, 1944, covers merchandise imported from Canada on March 14, 1944.

The pertinent provisions of law are as follows:

PAR. 726 [as modified by the trade agreement with Canada, T. D. 49752]. Oats, hulled or unhulled, 8¢ per bu. of 32 lbs.

PAR. 731 [as modified by the trade agreement with Canada, T. D. 49752]. Screenings, scalpings, chaff, or scourings of wheat, flaxseed, or other grains or seeds: Unground, or ground, 5 per centum ad valorem.

Public Law 211. * * * That notwithstanding the provisions of the Tariff Act of 1930, the following, when imported into the United States from foreign countries, and when entered, or withdrawn from warehouse, for consumption, during the period of ninety days beginning with the day following the date of enactment of this joint resolution, to be used as, or as a constituent part of, feed for livestock and poultry, shall be exempt from duty: Wheat, oats, barley, rye, flax, cottonseed, corn, or hay, or products in chief value of one or more of the foregoing or derivatives thereof: * * *

Sec. 2. The exemptions from duties provided for by this joint resolution shall be subject to compliance with regulations to be prescribed by the Secretary of the Treasury.

There is attached to each of the entries a laboratory report signed by the chief chemist or acting chief chemist of the United States customs laboratory at San Francisco. These were marked "Plaintiff's Collective Exhibit 1 for Identification." It was stipulated at the trial that:

\* \* \* if Henry L. Alves, Chief Chemist, Customs Service in San Francisco, and Edward R. Miller, the Acting Chief Chemist at that Port, were called to testify they would testify that they examined samples of these importations forwarded to them by the Portland Appraiser, and found that they consisted of the mixtures as described in Collective Exhibit 1 for Identification.

The said laboratory reports state that the imported merchandise consisted of the following ingredients:

| | Entry No. 083 | Entry No. 0112 | Entry No. 0121 |
|---|---|---|---|
| Cultivated oats | 17. 2% | 14. 1% | 12. 3% |
| Wild oats | 77. 0 | 81. 5 | 81. 0 |
| Barley | 2. 1 | | |
| Wheat | 1. 0 | 0. 6 | 0. 6 |
| Unhulled wheat | 1. 9 | | |
| Foreign matter, chaff, weed seeds, etc | 0. 8 | 3. 8 | 6. 1 |

At the trial, Charles A. Babcock testified that he had been with Edward L. Eyre & Co., the importer, since 1934; that he had graded grain and had worked in the office as a grain accountant and traffic manager; that he had seen samples of the merchandise herein; that it contained over 60 per centum wild oats, together with a little wheat, a little barley, and some weed seeds. He stated that a similar product is obtained in the United States by putting grain as it is obtained from the fields through a machine which separates the whole grain from the screenings or mixed feed oats; and that such a mixture is used as follows:

It can only be used by grinding it up and mixing in other feeds, to sell to dairymen or poultrymen, who grind it up and use it as oats in mash feed that they feed poultry, or they will grind it up and use it as oats.

He added that it could not be used to make breakfast foods for human consumption because it would be impossible to get the hulls off.

Harold Alvin Myers, deputy collector of customs, testified that the importer had given a bond in connection with each of the entries for the production of evidence as to the use of the material and that he had subsequently tendered affidavits in cancellation of the bonds. These affidavits were then offered in evidence, as plaintiff's collective exhibit 2, to show attempted compliance with the regulations and not as proof of the actual use of the material. The affidavits in connection with entries No. 083 and No. 0112 are signed by Edw. C. Wyss of Dairy Cooperative Association and that in connection with entry No.

0121 by Lee N. Highberger of Aumsville Flour Mills. Mr. Babcock was then recalled and testified that the importations herein were sold and delivered to Dairy Co-op and Aumsville Flour Mills.

Subsequently the submission of the case was set aside pursuant to stipulation and there were received in evidence, as plaintiff's collective exhibit 3, three affidavits of M. Muir, dated January 22, 1944, March 6, 1944, and March 16, 1944, solely for the purpose of showing attempted compliance with the applicable regulations.

It is apparent from the record that the merchandise herein is similar to that involved in *C. J. Tower & Sons* v. *United States*, 14 Cust. Ct. 94, C. D. 919, appeal dismissed, 33 C. C. P. A. 190, wherein we held that such merchandise was entitled to free entry under Public Law 211 and Public Law 272.

In order for such merchandise to be entitled to the exemption from duty, the regulations made pursuant to the statute must be complied with. *M. A. Hoenecke* v. *United States*, 17 Cust. Ct. 4, C. D. 1010; *Geo. S. Bush & Co., Inc.* v. *United States*, 18 Cust. Ct. 209, Abstract 51761. The regulations applicable to the importations herein are found in 79 Treas. Dec. 122, T. D. 50983, as follows:

58.2 *Entry requirements.* (a) There shall be filed in connection with the entry an affidavit of the importer that the merchandise, which shall be described by name, is imported to be used as, or as a constituent part of, feed for livestock or poultry.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

58.3 *Proof of use.* (a) Within 1 year from the date of entry (in the case of warehouse entries as well as consumption entries) the importer shall submit an affidavit of the superintendent or manager of the manufacturing plant stating the use to which the article has been put. If the collector is satisfied that the imported product was not used by the importer and was not used in a manufacturing process, but was sold substantially as the imported product to the ultimate user, he may accept as proof of the nature of such use an affidavit of the wholesaler or other person making the final sale of the product. &ast; &ast; &ast;

(b) Upon satisfactory proof of use of the product as, or as a constituent part of, feed for livestock or poultry, the entry shall be liquidated free of duty. &ast; &ast; &ast;

In the instant case the importer filed preliminary affidavits declaring that the shipments, mixed feed oats, were to be used as, or as a constituent part of, feed for livestock or poultry. (Plaintiff's collective exhibit 3.) There were also filed an affidavit of Edw. C. Wyss, as Manager Feed Department of Dairy Cooperative Association, stating that the mixed feed oats entered under CE No. 083 had been used as a constituent part of feed for livestock (or poultry); an affidavit of Edw. C. Wyss as Superintendent of Dairy Cooperative Association, stating that the mixed feed oats entered under C. E. No. 0112 had been used as, or as a constituent part of, feed for livestock or poultry; and an affidavit of Lee N. Highberger, as owner and manager of Aumsville Flour Mills, stating that the mixed feed oats entered under CE No. 0121 had been used as, or as a constituent part

of, feed for livestock or poultry. (Plaintiff's collective exhibit 2.) While these affidavits do not go into detail, they state in the words of the statute that the merchandise is to be or has been used as, or as a constituent part of, feed for livestock or poultry. We think that constitutes compliance with the regulations.

However, the collector is not required to liquidate the entry free of duty except "upon *satisfactory* proof of use of the product as, or as a constituent part of, feed for livestock or poultry." [Italics supplied.] The proof here may have been deemed unsatisfactory by the collector. Public Law 211 grants exemption from duty only to such importations of grain and grain products as are to be used as, or as a constituent part of, feed for livestock and poultry. It is therefore part of the importer's case to prove that its merchandise has been used for such purpose. That proof cannot be furnished by the affidavits submitted to the collector where the defendant objects to their admission as evidence of the facts stated therein. *Borgfeldt & Co.* v. *United States*, 11 Ct. Cust. Appls. 421, T. D. 39433; *Hull* v. *United States*, 10 Ct. Cust. Appls. 211, T. D. 38556; *B. Altman & Co.* v. *United States*, 13 Cust. Ct. 56, C. D. 868; *Britam Agencies* v. *United States*, 18 Cust. Ct. 185, Abstract 51670.

In *Borgfeldt & Co.* v. *United States, supra*, a claim was presented to the collector for an allowance on the ground of nonimportation. The affidavits required by the regulations were filed but the collector rejected the claim. No evidence other than the affidavits was offered at the trial. The court held that the issue at the trial was whether there had in fact been a nonimportation; that the affidavits filed with the collector were not competent evidence of the facts stated in them; that when the preliminary affidavits were filed with the collector he was not bound to accept them as conclusive proof of the facts stated therein; that he might become convinced that the affidavits were not correct in which case they would not constitute "evidence satisfactory to the collector"; that he would then be bound to act upon the basis of all the information before him and that his decision would be presumed to be correct. Upon failure of plaintiff to offer competent evidence of nonimportation, the protest was overruled.

The same situation is before the court in the instant case. The collector rejected plaintiff's claim that the merchandise was entitled to free entry under Public Law 211 and his decision is presumptively correct. The burden is upon the importer to prove before this court that the merchandise was in fact used as, or as a constituent part of, feed for livestock or poultry. Since the proof-of-use affidavits have been objected to by the defendant, they cannot be admitted as proof of the facts stated therein. The only other evidence offered by plaintiff is the statement of Mr. Babcock to the effect that this type of merchandise can be used only for feed for livestock or poultry. That

is not sufficient proof that these importations were actually so used. For this reason the protest must be overruled and judgment rendered for the defendant.

### DISSENTING OPINION

EKWALL, Judge: I am unable to agree with the holding that plaintiff has failed to prove that the merchandise involved in this case is entitled to free entry under the provisions of Public Law 211 (57 Stat. 607). I think the *Borgfeldt* case, cited in the majority opinion, is distinguishable in that there no evidence other than the affidavits was offered. In the instant case we have testimony of a competent witness that a commodity composed of ingredients such as disclosed by the chemist's reports in evidence can be used only by grinding "and mixing in other feeds, to sell to dairymen or poultrymen, who grind it up and use it as oats in mash feed that they feed poultry, or they will grind it up and use it as oats"; that it is not suitable for making breakfast foods for human beings because it is impossible to remove the hulls. From the evidence adduced herein, I can come to only one conclusion, namely, that if the merchandise was ultimately used at all, it was used as, or as a constituent part of, feed for livestock or poultry.

I therefore think that the plaintiff's claim for free entry on the ground that the commodity is "to be used as, or as a constituent part of, feed for livestock and poultry," under the terms of Public Law 211, should be sustained.