CHARLES T. WILSON CO., INC. *v.* UNITED STATES (No. 4625) [1]

United States Court of Customs and Patent Appeals, May 9, 1950

*Sharretts & Hillis* (*Edward P. Sharretts* of counsel) for appellant.
*David N. Edelstein,* Assistant Attorney General (*Joseph F. Donohue,* special attorney, of counsel), for the United States.

[Oral argument April 11, 1950, by Mr. Sharretts and Mr. Donohue]

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Third Division, rendered in conformity with its decision, C. D. 1163, overruling the protest of the importer, appellant.

In that protest appellant claimed that the onion powder and sliced dehydrated onions here in issue were properly dutiable at 25 per centum ad valorem under paragraph 781 of the Tariff Act of 1930, as spices, not specially provided for; or, alternatively, at 20 per centum ad valorem under paragraph 1558, as nonenumerated manufactured articles; or at 2½ cents per pound under paragraph 770, as onions, rather than as vegetables, prepared, not specially provided for, at 35 per centum ad valorem, as assessed by the collector at the port of New York, in accordance with the provisions of paragraph 775.

[1] C. A. D. 433.

The pertinent provisions of the Tariff Act of 1930 read as follows:

Par. 775. Vegetables (including horseradish), if cut, sliced, or otherwise reduced in size, or if reduced to flour, or if parched or roasted, or if pickled, or packed in salt, brine, oil, or prepared or preserved in any other way and not specially provided for; * * * 35 per centum ad valorem; * * *.

Par. 770. Onions, 2½ cents per pound; garlic, 1½ cents per pound.

Par. 781. Spices and spice seeds: Cassia, cassia buds, and cassia vera, ground, 5 cents per pound; cloves, ground, 6 cents per pound; clove stems, ground, 5 cents per pound; cinnamon and cinnamon chips, ground, 5 cents per pound; ginger root, not preserved or candied, ground, 5 cents per pound; mace, ground, 8 cents per pound; Bombay, or wild mace, unground, 18 cents per pound; ground, 22 cents per pound; mustard seeds (whole), 2 cents per pound; mustard, ground or prepared in bottles or otherwise, 10 cents per pound; nutmegs, ground, 5 cents per pound; pepper, capsicum or red pepper or cayenne pepper, unground, 5 cents per pound; ground, 8 cents per pound; paprika, ground or unground, 5 cents per pound; black or white pepper, ground, 5 cents per pound; pimento (allspice), ground, 3 cents per pound; sage, unground, 1 cent per pound; ground, 3 cents per pound; curry and curry powder, 5 cents per pound; mixed spices, and spices and spice seeds not specially provided for, including all herbs or herb leaves in glass or other small packages, for culinary use, 25 per centum ad valorem: * * *.

Par. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

The merchandise was imported during the recent World War from Mexico where the articles, consisting of 95 tins of dehydrated onion powder and 701 tins of dehydrated sliced onions, were prepared from the common variety of garden onions. They were there sliced, run through dehydrators, packed in that condition, and here sold as dehydrated sliced onions; or they were there ground, packed, and here sold as powdered onions.

The record discloses that counsel for the Government at the trial entered into a stipulation that both the onion powder and the dehydrated onions here in issue contain nothing except onions.

The following definitions from Webster's New International Dictionary, Second Edition, have been cited as pertinent in the determination of the question as to how the involved merchandise should be classified:

Onion, n. 1. The bulb of the Asiatic plant *Allium cepa;* also, the plant, having slender hollow tubular leaves. The bulb is a garden vegetable, having a characteristic (alliaceous) pungent taste and odor, and is eaten raw or cooked.

Spice, n. 4. An aromatic or savory article of food; a pungent or appetizing eatable or seasoning;—now only of condiments (see def. 5), except in *Dial. Eng.,* in which the word is applied to such things as gingerbread, sweetmeats, confectionery, currants, raisins, and other dried fruits.

*Specif.*: 5. Any of various aromatic vegetable productions, as pepper, cinnamon, nutmeg, mace, allspice, ginger, cloves, etc., used in cookery to season food and to flavor sauces, pickles, etc.; a vegetable condiment or relish, usually in the form of a powder; also, such condiments collectively.

Onion, v. t. 1. To flavor or season with onions.

Appellant contends that the record establishes not only (a) that the onion powder is a spice and used as such but also (b) that the sliced dehydrated onions are likewise spices. The testimony as to the onion powder differs from the testimony relative to the dehydrated onions. On the first point, appellant argues that the only use for onion powder is to season the products of the manufacturer of sausage and by the housewife to season the food she serves.

Appellant in support of its contention that the onion powder before the court is a spice points to the testimony of Lloyd M. Trafford, vice president of Charles T. Wilson, Inc., the importer and the appellant, who testified that appellant was particularly engaged in the business of handling spices, among other things, imported from South America; and that the onion powder here in issue was sold through a broker to customers who were engaged generally in the spice business and processed the imported material for food seasonings.

The witness Trafford stated further that the dehydrated portion of such imported onions were sometimes ground into a powder and mixed by spice dealers or grinders and packed and sold by them as an "onion salt"; that the housewife buys such salt in little glass containers, bearing the names of various noted spice dealers, and puts it on a roast cooking in the oven like any other seasoning is used.

Appellant's second witness, Charles Schnurman, was a salesman for the spice dealer who purchased the shipment of onion powder from appellant. The following excerpt from the record is deemed to contain the pertinent part of Mr. Schnurman's testimony:

Q. Did you offer that product for sale? A. Yes, sir.

Q. To what classes of purchasers did you offer it for sale? A. I call on the sausage manufacturers.

Q. Anyone else? A. No, sir, only sausage manufacturers.

Q. Did you sell part or all of this shipment to sausage manufacturers? A. Yes, sir.

Q. How long have you been familiar with onion powder? A. Oh, 25, 28 years.

Q. And to whom have you sold onion powder during this time, in addition to sausage manufacturers? A. Nobody else. I have always called on sausage manufacturers, meat processors.

Q. What does the term—what is included within the term "sausage manufacturers"; what products do they make? A. They make frankfurters, bologna, meat loaf, liverwurst, hams, spiced beefs and, well, a full line of sausage manufactures.

*      *      *      *      *      *      *      *

Q. Specifically, what have you seen these purchasers of yours do in the making of sausage? A. Well, naturally, they grind up the meat, and they add water or ice to it, and they add seasoning to it, such as pepper, nutmeg, mace, cardamom, and if the product is going to be used with garlic they put powdered or dehydrated garlic, or they use onion in it, then they use the dehydrated or powdered onion.

Q. Is that substantially the same procedure which is found in the making of frankfurters? A. Yes, sir.

Q. And meat loaf?   A. Yes, sir.

Q. And the other products you have named?   A. Yes, sir, all the way through.

Q. Do you know of any other uses for onion powder?   A. Well, my wife uses it home.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

XQ. You just stated, Mr. Schnurman, that onion powder was called a spice in the trade, is that so?   A. Spice or seasoning or flavor.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

XQ. Now, you stated that your wife used some onion powder which you had brought home merely by putting her finger on it, rubbing it over a piece of meat, chicken or pot roast.   A. That is right.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

The record discloses that the onion powder in its condition as imported then had a wide sale and use in the seasoning or flavoring of food and that both of the appellant's witnesses considered the product to be not only an ordinary vegetable substance containing nothing but onions but also a spice for the seasoning of food.

Having stipulated that the imported sliced dehydrated onions, like the onion powder, contained nothing but onions, counsel for the Government introduced in evidence the testimony of Technical Sergeant Joseph Meinohl who had 20 years experience as a cook in the United States Army.

The testimony of the witness Meinohl was to the effect that normally fresh onions were used in the preparation of specified dishes but when fresh onions could not be obtained dehydrated onions were used in field operations and overseas duty as an effective substitute for the fresh onions; that the fundamental use of dehydrated onions in such instances was that of a vegetable; and that dehydrated onions or onion powder gives a relish to food by improving the flavor and appetite.

There is no dispute with respect to the validity of the rule that where a statutory designation names an article without terms of limitation in a provision for duty, all forms of the article are thereby included within the provision unless a contrary legislative intent otherwise appears. *Smillie & Co.* v. *United States*, 11 Ct. Cust. Appls. 199, T. D. 38966; *Nootka Packing Co. et al.* v. *United States*, 22 C. C. P. A. (Customs) 464, T. D. 47464.

The legislative history of paragraph 770, which contains a statutory designation of onions by name and without terms of limitations, otherwise bears out the finding of the trial court that the provision applies solely to onions in their natural state. *United States* v. *La Manna, Azema & Farnan, et al.*, 14 Ct. Cust. Appls. 123, T. D. 41647.   See also *United States* v. *The Water Treatment Co. of America, Etc.*, 33 C. C. P. A. (Customs) 174, 178, C. A. D. 332.   Appellant

concedes that the imported goods are not onions in their natural state and hence the provisions of paragraph 770 have no application.

Appellant stated in its brief that the onion powder and dehydrated sliced onions should be held dutiable under paragraph 1558 as manufactured articles not enumerated and not specially provided for in the Tariff Act of 1930.

The point has not been otherwise argued by appellant and is without merit, since paragraph 775 provides for vegetables sliced or otherwise reduced in size, parched or roasted or preserved in any other way. *Mason* v. *Robertson*, 139 U. S. 624.

Moreover, the sliced dehydrated onions here in issue, having been cut and reduced in size by a process of dehydration, are dutiable as if specifically provided for by name and description in paragraph 775 under the rule that where a general class of articles is named in a statutory provision, wherein each article coming within the class is not specified, each of the articles is regarded as enumerated as if the names of each and all of them had been given. *United States* v. *Sears, Roebuck & Co.*, 20 C. C. P. A. (Customs) 295, 301, T. D. 46086. See also *United States* v. *Wing Chong Lung Co. et al.*, 33 C. C. P. A. (Customs) 36, C. A. D. 312.

The testimony submitted by the Government in the instant case outweighed the testimony submitted by appellant tending to establish that sliced dehydrated onions were chiefly used as spice. Appellant therefore failed to overcome the presumption of correctness attaching to the collector's classification with respect to that portion of the importation.

The final stage of the appeal involves the issue whether the imported onion powder is a spice within the provision in paragraph 781 for spices. Appellant contends here as it did before the Customs Court that the provision for spice is a designation by use which requires, upon the facts presented, that the onion powder be classified as a spice, not specially provided for.

The doctrine of classification by use is a rule of construction applied by the courts in ascertaining the intention of Congress and has no application where such intention is otherwise manifest. *Comstock & Theakston* v. *United States*, 12 Ct. Cust. Appls. 502, T. D. 40698.

The trial court on the point in question held that since onions are served with the principal part of the meal they are vegetables within the meaning of the tariff act, citing *Nix* v. *Hedden*, 149 U. S. 304. The Customs Court further held that onions do not become spices because of their change in form, and that:

The spices enumerated in paragraph 781 of the Tariff Act of 1930 are articles used primarily for seasoning and for the most part have no vegetable use. As to the provision for spices and spice seeds, not specially provided for, the Summary of Tariff Information, 1929, stated (p. 1511):

The more important of the spices not specially provided for are thyme leaves, marjoram leaves, and bay leaves. They are all used for flavoring foods; in the pickling industry; and medicinally.

This indicated that Congress did not intend to classify ordinary vegetables, even when used as seasoning because of their pungent flavor, as spices, but included articles primarily used for seasoning and having little or no vegetable use.

The single question in the case of *Nix* v. *Hedden, supra*, was whether tomatoes, considered as provisions, were to be classed as "vegetables" or as "fruit," within the meaning of the Tariff Act of 1883. Mr. Justice Gray there pointed out that fruits generally are served as dessert and vegetables, such as tomatoes, whether eaten cooked or raw, are usually served at dinner in, with, or after, the soup, fish, or meats which constitute the principal part of the repast.

In holding that the tomatoes were vegetables, the Supreme Court there stated that the attempt to class tomatoes with fruit was not unlike a previous attempt to class beans as seed, of which Mr. Justice Bradley, speaking for the Court, among other things, had said:

* * * in speaking generally of provisions, beans may well be included under the term "vegetables." As an article of food on our tables, whether baked or boiled, or forming the basis of soup, they are used as a vegetable, as well when ripe as when green. This is the principal use to which they are put. Beyond the common knowledge which we have on this subject, very little evidence is necessary, or can be produced. *Robertson* v. *Salomon*, 130 U. S. 412, 414.

The determination of the question whether an article is to be classed as a vegetable may therefore properly involve consideration of the principal use to which the article is put. The same rule was applied by this court to the question of whether an imported article was to be classed as a spice under paragraph 779 of the Tariff Act of 1922, the predecessor of paragraph 781 of the Tariff Act of 1930. *United States* v. *International Milling Co.*, 16 Ct. Cust. Appls. 176, T. D. 42809.

There the collector classified an importation of wild mustard seeds, screened from wheat or other grain, as spice under paragraph 779 in accordance with the provision for "mustard seeds (whole)" at 1 cent per pound. In affirming the judgment of the Customs Court which sustained the importer's protest that the merchandise was not dutiable as spice, this court stated:

If wild mustard seeds, like the importation at hand, were used as a condiment, Congress might have included them within paragraph 779. If they were used as an adulterant for the cultivated mustard, Congress might have provided for wild mustard seeds, whole or ground, at a different rate than the rate applicable to the commercial mustard used as a spice. Since wild mustard seeds are not used as a spice, no provision was made for "wild mustard" in the paragraph, and we do not think the provision for "mustard seeds (whole)" includes the merchandise.

Appellant urges that the imported onion powder was not used and could not have been used in its imported condition as the vegetable part of a meal; that it had no vegetable use whatever but was used

exclusively in great quantities as spice to season the products of sausage manufactures and by housewives to season food; and that the onion powder, as established by the undisputed evidence of record, was a spice and universally designated throughout the trade as such.

Counsel for the Government in their brief insist that the first error in appellant's argument resides in the assumption that vegetables, such as onions, can become a spice merely by the processes of preparation. The Government, however, does admit that here:

\* \* \* These processes of preparation have changed them substantially in form from the natural article, have altered many of their properties, and have removed them from the common understanding of the term "onions" as found in the dictionary and quoted in the opinion of the lower Court.

Appellant properly directs the court's attention to the fact that paragraph 775 provides for "Vegetables (including horseradish)" and that horseradish is a spice. Horseradish is defined in Webster's New International Dictionary, Second Edition, as a condiment made of the ground part of the horseradish plant.

Appellant argues that since horseradish is the only spice named in paragraph 775, Congress clearly showed the intention of excluding all other spices from the paragraph by specifically including this one spice by name in the paragraph. Appellant contends that the doctrine of *expressio unius est exclusio alterius*—which, freely translated, means the express mention of one thing implies the exclusion of another—compels that conclusion. Appellant also contends that the rule of relative specificity is also directly in point and controlling of the issue presented, citing *United States* v. *H. J. Heinz Co.*, 26 C. C. P. A. (Customs) 9, T. D. 49557. However, it is unnecessary to pass upon the validity of either of those contentions.

The Customs Court, upon its findings hereinbefore set forth, rejected appellant's contention that the involved onion powder should be classified as spice. In overruling the protest, and in holding that the onion powder was dutiable under paragraph 775 as vegetables prepared as if reduced to flour, the court further found that:

\* \* \* Since the word "flour" as used in paragraph 775 has been held to be a finely ground vegetable substance, whether or not bolted (*Martel Food Corp.* v. *United States*, 15 Cust. Ct. 109, C. D. 954), onion flour is equivalent to onion powder.

A finely ground vegetable substance, according to the dictionary definition of "spices" hereinbefore set forth and considered by the trial court may be a spice; namely, "a vegetable condiment or relish, usually in the form of a powder." Such a powder is not necessarily a flour within the meaning of the respective provisions for various kinds of flour in the tariff act, and there is nothing in the record to show that it is. On the contrary, appellant's evidence to the effect that it is a spice, exclusively used as such, by sausage manufacturers

and housewives to season foods, has not been successfully controverted by the Government.

It is clear therefore that appellant has overcome the presumption of correctness as to the collector's classification of the involved onion powder. Accordingly, appellant has made out a prima facie case which requires that the onion powder in issue be classified, as claimed, as spices, not specially provided for, within the meaning of paragraph 781.

In view of that conclusion, the judgment of the United States Customs Court is *modified*. The same is *affirmed* with respect to the classification and assessment with duty of the sliced dehydrated onions, and *reversed* as to the imported tins of onion powder.

JACKSON, J., Dissenting in part, does not agree that the powdered onion can be properly termed a spice but on the contrary it is properly dutiable under paragraph 775 as a vegetable reduced in size or as flour.